### The CITIZENS NATIONAL BANK OF PARIS, Illinois, et al., Appellants,

v.

### Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellees.

### No. 12106.

Court of Civil Appeals of Texas, Austin.

Oct. 16, 1974.

Rehearing Denied Nov. 6, 1974.

Morgan Hunter, McGinnis, Lochridge & Kilgore, Austin, for appellants.

John L. Hill, Atty. Gen. of Texas, Fisher A. Tyler, Marietta McGregor Payne, Asst. Attys. Gen., Austin, for appellees.

O'QUINN, Justice.

Appellants acted in behalf of the estate of Ethel Burnsides, deceased, in bringing this lawsuit against the proper officers of the State of Texas to recover inheritance taxes and interest in the sum of $20,748.35, paid under protest in May of 1972.[1]

The cause was submitted to the trial court, sitting without a jury, upon an agreed statement of facts, supplemented by testimony on behalf of defendants. From a judgment that plaintiffs take nothing, the representatives of the estate have appealed and bring two points of error. We will overrule the points of error and affirm the judgment of the trial court.

Under their points of error, appellants contend:

(1) that no death tax is levied in Texas by Article 14.12 (additional inheritance and transfer tax), V.A.T.S. Tax.-Gen., Title 122A, inasmuch as no federal estate tax is now imposed by the Federal Revenue Act of 1926, which has been replaced by the Internal Revenue Code of 1954, to which Article 14.12 makes no reference but instead refers to the 1926 Act;

(2) that in any event the Federal Estate deductions payable out of the gross estate in Texas should be deducted in computing the "net estate in Texas," with the result that the tax under Article 14.12 could not exceed $308.19.

■ Under their first point appellants contend that no tax whatever is now levied by Article 14.12, inasmuch as no Federal estate tax is now imposed by the Federal Revenue Act of 1926, which has been repealed.

Appellants' reasoning appears to be that since the maximum tax imposed by Article 14.12(A) is equal to "eighty per cent (80%) of the total sum of the estate and transfer taxes. imposed on such estate by the United States Government under the Revenue Act of 1926," an Act under which the United States no longer imposes a tax, then "eighty percent of zero is zero" and "eighty percent of no tax is no tax."

In this position appellants do not recognize that the existing and applicable statutes of both the state and the United States have brought forward the provisions necessary to preserve the system under which the states may compute local death taxes in relation to the levy made by the United States. In 1926, for the first time, the Congress of the United States allowed a credit of eighty percent of the federal estate tax for taxes paid to the states. (Sec. 301(b), Revenue Act of 1926) Under the prior Act of 1924 the credit was limited to twenty-five percent.

With passage of the Internal Revenue Code of 1939, the Act of 1926 was repealed, but Section 301(b) of that Act was carried forward in identical language as Section 813(b) of the Code of 1939. Under the Internal Revenue Code of 1954, the Act applicable to the estate involved in this appeal, the federal tax is imposed by Article 2001, and credit for state death taxes is prescribed by Article 2011.

The Legislature of Texas in 1959 revised the "inheritance tax and federal estate tax credit" statutes as Chapter 14 of Title 122A, Taxation-General (Acts 1959, 56th Leg. 3rd C.S., p. 187, ch. 1). Then, as now, the section designed to "Impose Additional Tax" on an estate by reason of

1. Ethel Burnsides, a resident of the State of Illinois, died testate devising certain oil and gas properties in Texas, a part of her estate, to designated charities in Illinois; the Citizens National Bank of Paris, a national banking association in Paris, Illinois, is Executor of the Estate of Ethel Burnsides, deceased, and Raymond Massey, a resident of Paris, Illinois, joins in his capacity as ancillary executor in Texas of the Estate of Ethel Burnsides, deceased, pursuant to letters testamentary issued by the county court of Gregg County, Texas. Defendants below, appellees here, pursuant to statute, are the Comptroller of Public Accounts, the State Treasurer, and the Attorney General of Texas.

property of the estate "situated in this State and taxable under the laws of this State" provides that the tax "shall be equal to the difference between the sum of such taxes due this State as inheritance or transfer taxes and eighty per cent (80%) of the total sum of the estate and transfer taxes imposed on such estate by the United States Government *under the Revenue Act of 1926* . . . ." (Art. 14.12(A), formerly Art. 7144a, Sec. 2b)

Similar references to the "Revenue Act of 1926" are made in subsections (B), (C), (D), and (E) of Article 14.12. (Formerly Secs. 3, 4, 5 and 8 of Art. 7144a) In 1965 the Legislature provided in Article 14.00A certain definitions, one being "(g) 'Revenue Act of 1926' *includes amendments and revisions thereto*." (Emphasis added) (Acts 1959, 56th Leg. 3rd C.S., p. 187, ch. 1, art. 14.00A, added by Acts 1965, 59th Leg., p. 830, ch. 402, sec. 2, eff. July 1, 1965)

Credit for state death taxes, as originally provided by Congress in the Revenue Act of 1926, was preserved in the Internal Revenue Code of 1954 in Section 2011(d) which provides:

"(d) Basic estate tax.—The basic estate tax and the estate tax imposed by the Revenue Act of 1926 shall be 125 percent of the amount determined to be the maximum credit provided by subsection (b). The additional estate tax shall be the difference between the tax imposed by section 2001 or 2101 and the basic estate tax."

The Code of 1954 prescribes rules which "represent a substantial simplification" of prior "complicated computation of the federal tax" which complications were brought about in 1932 when Congress "decided to effect a major increase in the federal tax rates." (Stephens and Maxfield: The Federal Estate and Gift Taxes, 2d ed., 1972, sup. 1973, pp. 13–14) Under changes found in the Statutes of 1932, " . . . the 1926 tax was continued as the 'basic tax,' which served to determine the amount of the [state] credit, and an 'additional tax' was separately imposed, against which

no credit for state death taxes was allowed. This accomplished the congressional purpose but unduly complicated computation of the federal tax; a dual computation was required, and computation of the 'basic tax' served no purpose other than to fix the maximum credit for state death taxes." (Stephens and Maxfield, *supra,* p. 14)

Thus it is found in the Code of 1954 that " . . . partly for the benefit of the state statutes that are geared to the federal 'basic' tax, the present statute includes a definition of 'basic' and 'additional' taxes in section 2011(d). Since the maximum credit provided in section 2011(b) is in effect 80 per cent of the old 'basic' tax, that tax is now defined as 125 per cent of the maximum credit. The additional tax is defined as the difference between the basic tax and the tax imposed by the 1954 Code." (Stephens and Maxfield, *supra,* p. 14)

Further explanation of the changes effected in the Code of 1954, which were made without disturbing the credits for state death taxes, is found in American Jurisprudence, 2d Series: "Some state death tax statutes employ the terms 'basic estate tax' and 'additional estate tax' as used in the '39 Code or the term 'estate tax' imposed by '*the Revenue Act of 1926.*' [Emphasis added] For the purpose of supplying a means of computing state death taxes under such local statutes (so-called 'pickup' taxes), the law continues to include a definition of such terms." (34 Am.Jur.2d, 1974, sec. 8720, p. 857)

It is clear that the additional tax assessed by the Comptroller on the eighty percent credit allowed by the United States, when calculated under the formula now provided, resulted in an amount equal to eighty percent of the tax under the rates of 1926. The tax was lawfully assessed as provided under Article 14.12 and conformably to the formula permitted under the federal statutes.

We agree with appellees that since the allowable federal credit is the same in

amount as it was prior to repeal of the Revenue Act of 1926, and since the credit has been carefully and intentionally preserved in the Code of 1954, there has been no need to amend the Texas statutes dealing with the credit following enactment of the 1954 federal statutes. The addition in 1965 of Article 14.00A(g), defining the "Revenue Act of 1926" to include "amendments and revisions thereto," preceded the death of decedent in this case which occurred August 1, 1968. The Code of 1954 clearly is a revision of the credit provisions found in the Code of 1926, and if express incorporation of that provision was needed, it was accomplished in Article 14.-00A(g) more than three years prior to the time the additional tax accrued in this case. The Supreme Court has held that the Texas statutes levying the additional tax must necessarily be construed in conjunction with the federal estate tax statutes. Simco v. Shirk, 146 Tex. 259, 206 S.W.2d 221, 222 (1947); Sinnott v. Gidney, 159 Tex. 366, 322 S.W.2d 507, 513 (1959); see, also, dissent of Justice Hughes in Shirk v. Simco, 200 S.W.2d 704, 707–708.

We overrule appellants' contentions that the Texas statutes do not levy a valid additional tax on their theory that repeal of the Code of 1926 made inapplicable the state statute imposing an estate tax to take advantage of the credit provision of the 1926 federal statutes, since the federal credit provisions were carried forward into the Code of 1939 and are found repeated in the Code of 1954. The question is reviewed, with the same conclusion, in a Montana decision. In re McLaughlin's Estate, 154 Mont. 318, 462 P.2d 882, 884 (1969).

In issue under appellants' second point is whether the Comptroller's method of calculating the amount of the *additional* tax, as opposed to the *basic* tax, conforms to the state statutes. The Comptroller found the *basic* inheritance tax to be $638.50, which was deducted from the *additional* tax of $18,876.72, leaving the tax in dispute at $18,238.22, plus interest amounting to $2,510.13. Appellants contend that, if any tax at all is imposed by Article 14.12, the only amount that can be levied lawfully is $308.19.

The method of computing the *additional* inheritance tax levied by this state is set out in Article 14.12(D):

"(D) Computation of Tax. In determining what is eighty per cent (80%) of the United States estate tax mentioned in the preceding Sections, the same shall be computed as eighty per cent (80%) of such taxes actually assessed and determined by the Federal Government under the Revenue Act of 1926, against every estate situated wholly in this State, or in case an estate is situated partly in this State and partly outside of this State, then such eighty per cent (80%) shall be computed as eighty per cent (80%) of the total amount of the Federal taxes finally determined and assessed by the Federal Government under the Revenue Act of 1926, on and against that part of the estate situated in the State of Texas, and said amount of Federal tax shall be determined by multiplying the total Federal estate tax on the entire estate by a percentage which shall be the same percentage as the percentage of the net estate located in Texas is to the total net estate of the decedent, wherever located, before deducting specific exemptions."

The specific language of the statute, giving rise to the issue under consideration, is found in the latter portion and is repeated, with added emphasis, as follows:

" . . . and said amount of Federal tax shall be determined by multiplying the total Federal estate tax on the entire estate by a *percentage* which shall be the same *percentage* as the percentage of the *net estate located in Texas* is to the *total net estate* of the decedent, wherever located, before deducting specific *exemptions.*"

In this case the decedent, a nonresident of Texas, died testate devising certain oil

and gas properties in Texas, which were a part of her estate, to specified charities in the State of Illinois. Under provisions of Articles 14.01 through 14.11 charitable devises and bequests are exempt from the *basic* inheritance tax, but the Texas *additional* inheritance tax is imposed by Article 14.12(A) and is calculated by the method prescribed by Article 14.12(D) quoted above. The *basic* tax, upon the passing of property located in Texas to legatees of the decedent, amounted to $638.50, which, as already stated, the Comptroller deducted from the *additional* tax determined by him, leaving a net tax, plus interest, in the sum of $20,748.35.

Appellants argue that the Comptroller erred by calculating the Texas pro rata share of the federal credit to be 22.0166 percent of the total credit allowable, rather than 1.1042 percent of the total credit, which appellants insist is the proper percentage. The total gross estate, wherever located, amounted to $2,745,821.62, and the gross estate within Texas was $604,536.50. Pursuant to section 2001 et seq. of the Code of 1954, the federal authorities determined and assessed against the estate a federal estate tax. In this determination and assessment, the estate was allowed, under section 2011, a credit for state death taxes in the amount of $85,738.59.

The calculations of the Comptroller followed these steps: first, the Comptroller ascertained the percentage which the gross estate in Texas, which was $604,536.50, bears to the gross estate wherever located, which was $2,745,821.62, and arrived at 22.0166 percent; second, the Comptroller subtracted 22.0166 percent of the total *deductions* allowed by the federal authorities from the *gross* estate within Texas, and arrived at a *net* taxable estate in Texas of $397,945.68. The *net* taxable estate in Texas was then shown to be 22.0166 percent of the net taxable estate, wherever located, which was $1,807,480.44. Applying the same percentage to the total allowable federal credit for state death taxes, which was $85,738.59, the Comptroller arrived at

an additional inheritance tax of $18,876.72 due the State of Texas.

Appellants contend that the Comptroller erred in allocating deductions "as within and without the State in proportion to gross estate, without regard to the specific portions of the gross estate out of which the respective deductions were payable." Since no part of funeral and administrative expenses, appellants argue, and no debts of decedent, were paid or were payable out of the surface and mineral properties in Texas, and except for the mineral properties in Texas, no part of the charitable bequests were paid or payable out of any part of the gross estate located in Texas, it was improper for the Comptroller to subtract from the estate within Texas a percentage of the federal deductions.

The Comptroller's answer to this argument is that the entire estate of decedent, wherever located, is subject, to the federal estate tax laws and it is through the entire estate that the federal credit for state death taxes is produced; since the mineral properties in Texas, which constituted the charitable bequest, were included in the federal gross estate, which produced a federal credit for state death taxes, the State of Texas is entitled to its proportionate share of the federal credit.

We agree with the Comptroller that such deductions must be prorated necessarily, for if not calculated by this method, the purpose of the statute, which was enacted to take full advantage of the allowable federal credit, could very well be defeated. In Shirk v. Simco, *supra,* the executor had paid state taxes in Illinois and Indiana before the Texas claim was asserted. The court of civil appeals held that the allowable had been practically consumed, leaving only $60.81 for Texas. (200 S.W.2d 704, 706–707) The Supreme Court reversed that holding and held that the Texas statute authorized the state to compute its part of the federal allowable credit on the basis of the total amount of federal taxes in proportion to the value of the estate locat-

ed in Texas, compared with that portion of the value situated outside the state, and that nothing in the federal law would defeat a state's right to tax property within the state or to deprive the state of its right to assess and collect its share of the taxes based upon the value of the property situated within the state. (206 S.W.2d 221, 223–224)

Appellants insist that the gross estate in Texas ($604,536.50), when reduced by the amount of the charitable exemptions ($584.579.00), should leave subject to taxation by Texas a value of only $19,957.50. This latter figure, appellants point out, is only 1.1042 percent of the net estate wherever situated ($1,807,480.44). This percentage would produce an additional inheritance tax due Texas in the sum of $308.19.

In this approach to computation appellants contend that the phrase "net estate located in Texas" as used in Article 14.-12(D) means "gross estate located in Texas less deductions payable out of gross estate located in Texas," and that the Comptroller's practice of computing the tax is contrary to the plain meaning of the statute.

■ We hold that the method of computation employed by the Comptroller, under which the percentage relation of the property within Texas to the entire estate wherever located is maintained, does not do violence to either the state statute or the federal code, but rather achieves the purpose of the statutes to permit the state to take full advantage of the credit allowed for state death taxes. (See Sinnott v. Gidney, *supra,* 322 S.W.2d 513, col. 2)

At the trial of this cause the Comptroller made proof of the constructions and interpretations of the department over a long period of time, known to one witness to have been approximately twenty-five years, by which it was shown that the method of computation used in this case was the same method employed consistently by the de-

partment over a period of many years. Three opinions of Attorneys General of Texas were introduced showing that the state's attorney had ruled in accordance with the holdings stated in the opinions and that the opinions were the basis for departmental construction of long standing as to statutory provisions governing the computation of the additional inheritance tax. The earliest opinion, in 1935, dealt specifically with the additional tax which the Legislature adopted in the Act of 1933. In addition, the Comptroller introduced certified copy of a record in a Travis County District Court in a case not appealed in which the court in 1959 reviewed the Comptroller's established method of computing the additional inheritance tax and entered judgment in effect approving the method.

It appears from the record that the Comptroller's construction of Article 14.-12(D) in computing the additional tax has remained unchanged since enactment of the tax in 1933, and that the pertinent language of the statute has not undergone material change. This Court, in 1940, deciding an inheritance tax case, held that departmental constructions consistently given a statute over a long period of time, since enactment of the law, should be given proper weight by the courts in construing the statute. Walker v. Mann, 143 S.W.2d 152, 156 (Tex.Civ.App. Austin 1940, writ ref.) In that case this Court said, "The tax in question is 'a source of revenue, the consideration of which is one of the primary duties of the Legislature,' and since it has apparently acquiesced in the departmental construction of the statutes in question for a period of seventeen years, and if the statutes are of doubtful meaning, then they should now be given that construction placed upon them for such a long period of years by the departments of government having charge of their enforcement." (143 S.W.2d 157, citing cases)

We overrule appellants' second and final point under which contention is made that

the method of computation used by the Comptroller in this case, to arrive at the additional inheritance tax due the state, is without support in statute or case law.

The judgment of the trial court is affirmed.

Affirmed.