The CITIZENS NATIONAL BANK OF PARIS, ILLINOIS et al., Petitioners,

v.

Robert S. CALVERT, Comptroller, et al., Respondents.

No. B–4964.

Supreme Court of Texas.

July 16, 1975.

Rehearing Denied Sept. 24, 1975.

McGinnis, Lochridge & Kilgore, Morgan Hunter, Austin, for petitioners.

John L. Hill, Atty. Gen., Marietta McGregor Payne, Asst. Atty. Gen., Austin, for respondents.

SAM D. JOHNSON, Justice.

Ethel Burnsides, a resident of the State of Illinois, died testate devising part of her estate, consisting of the mineral estate on a tract of land located in Texas, to designated charities in Illinois. The Citizens National Bank of Paris, Illinois, the executor of the estate of Ethel Burnsides, and Raymond Massey, ancillary executor in Texas (hereinafter referred to as the executors), brought this lawsuit against the Comptroller of Public Accounts, the State Treasurer and the Attorney General of Texas (hereinafter referred to collectively as the Comptroller) to recover inheritance taxes and interest in the sum of $20,748.35 paid under protest to the State of Texas in May of 1972. The cause was submitted to the trial court, sitting without a jury, upon an agreed statement of facts, supplemented by testimony on behalf of the Comptroller. The trial court rendered judgment for the Comptroller that the executors take nothing. The court of civil appeals affirmed. 515 S.W.2d 142. We reverse the judgments of the courts below and render judgment for the executors.

Texas inheritance tax statutes include both a "Basic Inheritance Tax," Articles 14.01,[1] et seq., and an "Additional Inheritance and Transfer Tax," sometimes referred to as a "pick up" inheritance tax, Article 14.12. Article 14.12 was passed "to take full advantage of the eighty per cent (80%) credit allowed by the Federal Revenue Act of 1926." Article 14.12(E). If the "basic" inheritance tax imposed by Articles 14.01, et seq., does not exhaust the allowable federal offset or credit, Article 14.12 imposes an additional pick up tax in order

---

1. Tex.Tax.-Gen., Title 122A, hereinafter cited by article only.

to insure that the full amount of the offset or credit allowed by the federal statute is obtained.

Article 14.12(A) imposes the additional pick up tax:

"(A) Impose Additional Tax. In addition to the inheritance tax already levied by this State under existing laws, an inheritance and transfer tax is hereby levied upon the net estate of every decedent dying after this Act shall take effect, and whose estate, or any portion thereof, is, or hereafter shall be, made taxable under the inheritance tax laws of this State, or that may be subject to such taxes under any law of this State that may be hereinafter enacted. Said tax shall be, and is, levied upon the entire net value of the taxable estate of the decedent situated and taxable in the State of Texas, and the tax on each such estate shall be equal to the difference between the sum of such taxes due this State as inheritance or transfer taxes and eighty per cent (80%) of the total sum of the estate and transfer taxes imposed on such estate by the United States Government under the Revenue Act of 1926, by reason of the property of such estate which is situated in this State and taxable under the laws of this State."

Article 14.12(D) details the method by which this tax is to be computed:

"(D) Computation of Tax. In determining what is eighty per cent (80%) of the United States estate tax mentioned in the preceding Sections, the same shall be computed as eighty per cent (80%) of such taxes actually assessed and determined by the Federal Government under the Revenue Act of 1926, against every estate situated wholly in this State, or in case an estate is situated partly in this State and partly outside of this State, then such eighty per cent (80%) shall be computed as eighty per cent (80%) of the total amount of the Federal taxes finally determined and assessed by the Federal government under the Revenue Act of

1926, on and against that part of the estate situated in the State of Texas, and said amount of Federal tax shall be determined by multiplying the total Federal estate tax on the entire estate by a percentage which shall be the same percentage as the percentage of the net estate located in Texas is to the total net estate of the decedent, wherever located, before deducting specific exemptions."

Ethel Burnsides left a large estate in Illinois and a single Texas asset—a tract of land in Gregg County. The surface estate of the Texas tract was devised to noncharitable devisees and was stipulated to be worth, for tax purposes, $19,957.50. The mineral estate, which was devised to charities located in Illinois was stipulated to be worth, for tax purposes, $584,579. The basic tax on the surface estate was computed to be $638.50 and is not at issue in this appeal. There was no basic tax imposed on the mineral estate because it was devised to charitable beneficiaries. *See* Article 14.-015(2). The allowable credit for state death taxes under the Internal Revenue Code of 1954, Section 2011, has been computed to be $85,738.59, also a figure which is not in dispute. The sole question involved in this case regards the computation of the amount of the pick up tax imposed by Article 14.12.

The Comptroller asserts that in computing the pick up tax one should first ascertain the percentage which the gross estate in Texas ($604,536.50) bears to the gross estate wherever located ($2,745,-821.62), which is 22.0166 percent. Then the net taxable estate wherever located should be determined by subtracting the total deductions allowed by federal authorities from the gross estate wherever located. Next, 22.0166 percent of the total deductions allowed by federal law should be subtracted from the gross estate within Texas to arrive at a net taxable estate in Texas of $392,945.85. Thus ascertained, the net taxable estate in Texas amounts to 22.0166 percent of the net taxable estate wherever located ($1,807,480.44). Applying this percentage to the total allowable federal credit

for state death taxes ($85,738.59), the Comptroller arrives at an additional tax of $18,876.72. From this amount the basic inheritance tax previously paid, in the amount of $638.50, must be subtracted, with the resulting tax in question computed to be $18,238.52 plus $2,510.13 interest.[2]

Notwithstanding the circuitous calculation the Comptroller now advances, the agreed statement of facts reveals the Comptroller used an abbreviated method to compute the pick up tax in the instant case:

"The Defendant Calvert, in fixing the amount of the Article 14.12 tax due, subtracted the $638.50 of basic inheritance tax from the sum of $18,876.72, which the Comptroller determined to be 'the Pro-Rata Share of Federal Credit for State Death Tax due the State of Texas.' The Comptroller calculated the $18,876.72 by multiplying $85,738.59 (total credit) by a fraction of which the numerator was $604,536.50 (gross estate within Texas), and the denominator was $2,745,821.62 (gross estate everywhere)."

The Comptroller concedes both of his methods of calculation yield the same figures because they are both based on a gross estate to gross estate ratio. However, he contends the computation of the pick up tax using a percentage determined by calculating the ratio of gross estate in Texas to gross estate everywhere complies with Article 14.12(D).

2. In summary, the computation advanced by the Comptroller is as follows:

1. Determine the proportion that the gross estate in Texas bears to the total gross estate of decedent.

$$\frac{\text{Texas gross}}{\text{Entire gross}} \quad \frac{\$\ 604,536.50}{\$2,745,821.62} = 22.0166\%$$

2. Determine net estate *wherever located.*

| | |
|---|---|
| Total gross estate | $2,745,821.62 |
| Less: | |
| Funeral and administrative expenses | 112,039.79 |
| Debts and mortgages | 11,996.73 |
| Charitable deduction | 814,304.66 |
| Entire net estate | $1,807,480.44 |

3. Determine net estate *in Texas.*

| | |
|---|---|
| Texas gross estate | $ 604,536.50 |
| Less: | |
| Percent of funeral and administrative expenses | 112,039.79 x 22.0166% |
| Percent of debts | 11,996.73 x 22.0166% |
| Percent of charitable deduction | 814,304.66 x 22.0166% |
| Texas net estate | $ 397,945.68 |

4. Determine the proportion the net estate in Texas bears to the total net estate.

$$\frac{\text{Texas net}}{\text{Entire net}} \quad \frac{\$\ 397,945.68}{\$1,807,480.44} = 22.0166\%$$

5. Multiply this percentage times the total federal credit for state death taxes.

| | |
|---|---|
| Total federal credit | $    85,738.59 |
| Texas percentage | x 22.0166% |
| Gives: additional Texas death tax | $    18,876.72 |
| Less: basic tax previously paid | 638.50 |
| | $    18,238.22 |
| Plus: interest | 2,510.13 |
| Equals: total additional tax due and paid under protest | $    20,748.35 |

The executors contend, on the other hand, that the plain wording of Article 14.12(D) indicates that the pick up tax should be computed by using a percentage determined by calculating the ratio of net estate in Texas to net estate everywhere. Specifically, they rely on that part of Article 14.12(D), the article which provides for the computation of the tax, which states, ". . . and said amount of Federal tax shall be determined by multiplying the total Federal estate tax on the entire estate by a percentage which shall be the same percentage as the percentage of the *net estate* located in Texas is to the total *net estate* of the decedent, wherever located, before deducting specific exemptions." [Emphasis supplied.]

In calculating the tax the executors first determine the Texas net estate by subtracting the Texas deductions ($584,579, the value of the mineral estate) from the Texas gross estate ($604,536.50). Thus calculated, the Texas net sum is $19,957.50. Next, the executors determine the total net estate by subtracting the total deductions ($938,341.18) from the total gross estate everywhere ($2,745,821.62). This calculation yields a total net estate of $1,807,480.44. Then the executors determine the percentage the Texas net estate ($19,957.50) bears

to the total net estate ($1,807,480.44), which is 1.1042 percent. The Texas share of the total federal credit is calculated by multiplying 1.1042 percent times the total federal credit of $85,738.59 for a total Article 14.12 tax of $946.69. Subtracting the basic tax of $638.50, the executors arrive at a total additional tax of $308.14.[3]

Simply stated, the difference in the two calculations is this: The executors would subtract the full deduction allowed on Texas property to determine Texas net estate; the Comptroller would determine the Texas net estate by subtracting from the value of the Texas gross estate only a percentage of the Texas deductions prorated to correspond to the ratio which gross estate in Texas bears to the total gross estate. The Comptroller acknowledges that the effect of the calculation whereby he prorates the Texas deductions is that the percentage he uses to determine the Article 14.12 tax is based on a *gross estate* to *gross estate* formula. The calculation used by the executors, on the other hand, yields a percentage based on a *net estate* to *net estate* formula.

Article 14.12(D) clearly states that the percentage used to determine the tax ". . . shall be the same percentage as the per-

**3.** The executors' calculations can be summarized as follows:

1.  Determine net estate *in Texas*.

| | |
|---|---|
| Texas gross estate | $ 604,536.50 |
| Texas deductions | 584,579.00 |
| Texas net | $ 19,957.50 |

2.  Determine *total* net estate.

| | |
|---|---|
| Total estate | $2,745,821.62 |
| Total deductions | 938,341.18 |
| Total net estate | $1,807,480.44 |

3.  Determine percentage Texas net bears to total net.

$$\frac{\text{Texas net} \quad \$ \ 19{,}957.50}{\text{Total net} \quad \$1{,}807{,}480.44} = 1.1042\%$$

4.  Determine additional or pick up tax by multiplying total federal credit by this percentage.
    $85,738.59 x 1.1042% = $946.69.

5.  Subtract basic tax.

| | |
|---|---|
| Additional Texas death tax | $ 946.69 |
| Less: basic tax previously paid | 638.50 |
| Equals: total tax due | $ 308.14 |

centage of the *net estate* located in Texas is to the total *net estate* of the decedent, wherever located, before deducting specific exemptions." [Emphasis supplied.] The Comptroller nevertheless contends his calculation, based upon a gross estate to gross estate formula, complies with the statute because it yields the greatest tax advantage to the state and the Legislature intended to provide for a method of calculation which would take full advantage of the federal tax credit provisions. In support of his position, the Comptroller cites *Simco v. Shirk,* 146 Tex. 259, 206 S.W.2d 221 (1947). However, *Simco* involved neither the computation of the value of the net estate located in Texas nor the method of calculation used to arrive at the total amount of the pick up tax which would be due to the State of Texas. Rather, that case established only that the fact another state has already used most of the federal credit does not bar Texas from collecting its statutory share of such credit.

■ In determining the correct method of calculating the pick up tax as outlined in Article 14.12(D), the legislative intent *as expressed in the statute* must be given controlling importance. Vernon's Tex.Rev.Civ. Stat.Ann. art. 10, subd. 6; *Calvert v. Texas Pipe Line Company,* 517 S.W.2d 777 (Tex. 1974); *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711 (1961). Any interpretation of the statute must be consistent with the wording used and only when the plain meaning of the statute works an absurdity can it be disregarded. *E. g., Gilmore v. Waples,* 108 Tex. 167, 188 S.W. 1037 (1916). Moreover, tax statutes are construed strictly against the state. *Calvert v. Coke,* 458 S.W.2d 913 (Tex.1970); *Calvert v. Fort Worth National Bank,* 163 Tex. 405, 356 S.W.2d 918 (1962).

■ We believe the plain meaning of the language used by the Legislature in Article 14.12(D) precludes the method of calculation advanced by the Comptroller. We hold that the method of calculating the Article 14.12 tax advanced by the executors—a method based upon a net estate to net estate formula—is the procedure dictated by the statute for determining the amount of the tax pursuant to Article 14.12(D).

■ The Comptroller further argues, however, that the long-standing construction of Article 14.12(D) placed upon that statute by his department should be controlling. Though departmental interpretation of a statute may be helpful when the statute is ambiguous, *cf. Walker v. Mann,* 143 S.W.2d 152, 156 (Tex.Civ.App.—Austin 1940, writ ref'd), such interpretation will not be followed when contrary to the words of the statute. *Brown Express, Inc. v. Railroad Commission,* 415 S.W.2d 394 (Tex. 1967); *Eddins-Walcher Butane Company v. Calvert,* 156 Tex. 587, 298 S.W.2d 93 (1957).

The judgments of the courts below are reversed and the cause is remanded to the trial court for rendition of judgment consistent with this opinion.