sw bell 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



ON MOTION FOR REHEARING


 




NO. 3-93-552-CV





SOUTHWESTERN BELL TELEPHONE COMPANY; TEXAS STATEWIDE


TELEPHONE COOPERATIVE, INC.; AND GTE SOUTHWEST, INCORPORATED,



 
 APPELLANTS


vs.





PUBLIC UTILITY COMMISSION OF TEXAS; AT&T COMMUNICATIONS


OF THE SOUTHWEST, INC.; MCI TELECOMMUNICATIONS CORP.;


TEXALTEL; DIGITAL DIRECT OF DALLAS, INC.;


SPRINT COMMUNICATIONS CO., L.P.; TELEPORT COMMUNICATIONS GROUP;


MFS COMMUNICATIONS CO., INC.; TIME WARNER


ENTERTAINMENT CO., L.P.; AND AMERICAN PETROLEUM INSTITUTE,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 92-16422, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 




 The opinion issued herein on September 21, 1994, is withdrawn, and the following
opinion is filed in lieu thereof.

 Southwestern Bell Telephone Company, appellant, filed suit against the Public
Utility Commission ("the Commission"), appellee, pursuant to the Administrative Procedure Act
("APA"), Tex. Gov't Code Ann. § 2001.038 (West 1994), (1) seeking a declaratory judgment that
two of the Commission's substantive rules were invalid. Several parties intervened in the suit,
some as plaintiffs challenging the rules and some as defendants in support of the rules. (2) The
district court rendered summary judgment for the Commission declaring that the rules were valid
as adopted and as applied. On appeal, Southwestern Bell asserts that the trial court erred in
granting the Commission's motion for summary judgment and in denying its own motion for
summary judgment, because the rules (1) violate the Public Utility Regulatory Act ("PURA"),
Tex. Rev. Civ. Stat. Ann. art. 1446c, §§ 1-120 (West Supp. 1994); and (2) deny Southwestern
Bell its constitutional rights to due process and equal protection of the laws. See Tex. Const. art.
I, §§ 3, 19; U.S. Const. amend. XIV. We will reverse in part and affirm in part.


FACTUAL AND PROCEDURAL BACKGROUND


 The Commission regulates all public utilities operating within the State of Texas. 
See PURA §§ 16, 50(1). The term "public utility" is defined to include anyone "owning or
operating for compensation in this state equipment or facilities for . . . the conveyance,
transmission, or reception of communications over a telephone system as a dominant carrier as
hereinafter defined." PURA § 3(c)(2)(A) (emphasis added). (3) Because a telecommunications
company's status as a "public utility" depends on whether it is a "dominant carrier," PURA
provides that


"dominant carrier" when used in this Act means (i) a provider of any particular
communication service which is provided in whole or in part over a telephone
system who as to such service has sufficient market power in a telecommunications
market as determined by the commission to enable such provider to control prices
in a manner adverse to the public interest for such service in such market; and (ii)
any provider of local exchange telephone service within a certificated exchange
area as to such service. . . . Any such provider determined to be a dominant
carrier as to a particular telecommunications service in a market shall not be
presumed to be a dominant carrier of a different telecommunications service in that
market.


PURA § 3(c)(2)(B) (emphasis added).

 PURA does not define "local exchange telephone service." (4) Since 1984 the
Commission has defined the term in its substantive rule 23.61. Until 1992 rule 23.61 defined
"local exchange service" as follows:


Telecommunications service provided within service areas in accordance with the
local exchange tariffs. It includes the use of exchange facilities required to
establish connections between customer access lines within the exchange and
between customer access lines and the long distance facilities serving the exchange.


9 Tex. Reg. 4276 (1984). In the late 1980s, however, it became apparent that not every activity
falling within the literal definition of the term would be considered a local exchange service for
regulatory purposes. As technology in the telecommunications industry advanced, an increasing
number of so-called "competitive access providers" began offering services that were not
considered by the Commission to be local exchange services, but which competed with local
exchange services provided by local exchange companies. See Southwestern Bell Tel. Co. v.
Public Util. Comm'n, 745 S.W.2d 918 (Tex. App.Austin 1988, writ denied) (hereinafter "Dobie
Mall"); Southwestern Bell Tel. Co. v. Public Util. Comm'n, 735 S.W.2d 663 (Tex. App.Austin
1987, no writ). In 1992 the Commission amended its definition of "local exchange service"
contained in subparagraph (a)(17)(A) of rule 23.61 to read as follows:


Telecommunications service provided within an exchange for the purpose of
establishing connections between customer premises within the exchange, including
connections between a customer premises and a long distance service provider
serving the exchange. Local exchange service may also be referred to as local
exchange telephone service. (5)


17 Tex. Reg. 7884, 7894 (1992). More important than modifying this definition, however, the
Commission also amended rule 23.61 by adding subparagraph (a)(17)(B), which specifically
excluded nine categories of activities from the definition of "local exchange service." (6) This
amendment grew directly out of legal issues raised in cases such as Dobie Mall. (7)

 At the same time the Commission amended rule 23.61, it also adopted a rewritten
version of substantive rule 23.27, which dealt with "rate-setting flexibility for services subject to
significant competitive challenges." By way of background, in the early 1980s, with the breakup
of AT&T imminent, the legislature apparently began preparing for a gradual deregulation of the
telecommunications industry. In 1983 PURA was amended to provide:


The legislature finds that the telecommunications industry through technical
advancements, federal judicial and administrative actions, and the formulation of
new telecommunications enterprises has become and will continue to be in many
and growing areas a competitive industry which does not lend itself to traditional
public utility regulatory rules, policies, and principles; and that therefore, the
public interest requires that new rules, policies, and principles be formulated and
applied to protect the public interest and to provide equal opportunity to all
telecommunications utilities in a competitive marketplace.


PURA § 18(a). The legislature also amended section 18(c) of PURA to give the Commission
limited jurisdiction over specialized common carriers, resellers of communications, and other
communications carriers that are not dominant carriers. In 1987 the legislature added section
18(e) to PURA to give the Commission authority to adopt special rules and procedures to deal
with growing competition in the area of local exchange services:


For the purpose of carrying out the public policy stated in Subsection (a) of this
section and any other section of this Act notwithstanding, the commission is
granted all necessary power and authority under this Act to promulgate rules and
establish procedures applicable to local exchange companies for determining the
level of competition in specific telecommunications markets and submarkets and
providing appropriate regulatory treatment to allow local exchange companies to
respond to significant competitive challenges.


PURA § 18(e)(1). The Commission was simultaneously commanded to "promulgate these rules
and establish these procedures so as to incorporate an appropriate mix of regulatory and market
mechanisms reflecting the level and nature of competition in the marketplace." PURA § 18(g). 
The purpose of substantive rule 23.27 was to implement flexible regulatory procedures to enable
local exchange companies to respond to the "significant competitive challenges" contemplated by
section 18(e) of PURA.

 Southwestern Bell and the Commission have a fundamental disagreement about the
proper interpretation of the foregoing sections of PURA, particularly the portion of subsection
3(c)(2)(B) that defines "dominant carrier." Under the Commission's construction, a carrier who
provides local exchange telephone service is automatically a dominant carrier not only as to the
local exchange service it provides, but also as to all other services it provides. Under the
Commission's interpretation, therefore, PURA requires full regulation of all services provided
by a local exchange company, including services that do not constitute local exchange services. 
Southwestern Bell, on the other hand, asserts that a local exchange carrier is not automatically a
dominant carrier as to its provision of services other than local exchange services merely by virtue
of its being a provider of local exchange services. Thus, Southwestern Bell contends that PURA
does not authorize full regulation of its services that do not constitute local exchange services
without a determination of its market power to control prices as contemplated by subsection
3(c)(2)(B)(i).

 The language of rules 23.61 and 23.27 themselves do not reflect the conflicting
interpretations of PURA held by Southwestern Bell and the Commission. In its order adopting
rule 23.61, however, the Commission made its intention clear: "[T]he commission's reading does
not limit the dominance designation to a carrier's provision of local exchange service. Rather,
the dominance designation attaches to the provider and, therefore, applies to all services of that
provider." 17 Tex. Reg. at 7886. The order adopting rule 23.27 also refers to the Commission's
interpretation of the disputed sections of PURA. 17 Tex. Reg. 7869, 7869-70. Southwestern Bell
asserts that rules 23.27 and 23.61or the Commission's threatened application of themconflict
with PURA and are, therefore, invalid.


DISCUSSION


 This Court recently restated the familiar principles that


 "[A]n agency can adopt only such rules as are authorized by and consistent
with its statutory authority." Railroad Comm'n v. Lone Star Gas Co., 844 S.W.2d
679, 685 (Tex. 1992) (quoting State Bd. of Ins. v. Deffebach, 631 S.W.2d 794,
798 (Tex. App.Austin 1982, writ ref'd n.r.e.)). In this connection, it is well
settled that an agency rule may not impose additional burdens, conditions, or
restrictions in excess of or inconsistent with the relevant statutory provisions.


Railroad Comm'n v. ARCO Oil & Gas Co., 876 S.W.2d 473, 481 (Tex. App.Austin 1994, writ
requested); see also City of El Paso v. Public Util. Comm'n, 839 S.W.2d 895, 910 (Tex.
App.Austin 1992) ("[I]f there is no specific express authority for a challenged [agency] action,
and if the action is inconsistent with a statutory provision or ascertainable legislative intent, we
must conclude that, by performing the act, the agency has exceeded its grant of statutory
authority."), aff'd in part & rev'd in part, 37 Tex. Sup. Ct. J. 1092 (June 22, 1994).

 The cardinal rule of statutory construction is to ascertain and follow the
legislature's intent. Citizens Bank v. First State Bank, 580 S.W.2d 344, 348 (Tex. 1979); Minton
v. Frank, 545 S.W.2d 442, 445 (Tex. 1976). If possible, we ascertain that intent by looking at
the language used in the statute. Jones v. Del Andersen & Assocs., 539 S.W.2d 348, 350 (Tex.
1976); Railroad Comm'n v. Miller, 434 S.W.2d 670, 672 (Tex. 1968). The words in the statute
should be interpreted according to their ordinary meaning; they are not to be interpreted in an
exaggerated, forced, or strained manner. Commissioners Court v. Criminal Dist. Attorney,
Caldwell County, 690 S.W.2d 932, 936 (Tex. App.Austin 1985, writ ref'd n.r.e.). Every word
of a statute is presumed to have been used for a purpose, and every word excluded must also be
presumed to have been excluded for a purpose. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d
535, 540 (Tex. 1981); Barr v. Bernhard, 562 S.W.2d 844, 849 (Tex. 1978).

 Both Southwestern Bell and the Commission argue that the grammatical structure
of PURA § 3(c)(2)(B)(ii) and the placement of the phrase "as to such service" require the adoption
of their own interpretation. Thus, the Commission contends that "as to such service" modifies
"within a certificated exchange area," thereby making subsection (B)(ii) refer to an exchange area
that has been "certificated as to local exchange telephone service." Southwestern Bell, on the
other hand, contends that "as to such service" modifies "any provider of local exchange telephone
service" and that the effect of section (B)(ii) must, therefore, be limited to local exchange service. 
We believe neither argument hits the mark.

 We may not construe a statutory provision in isolation from the rest of the statute;
rather, we must consider the act as a whole, and not just a single phrase, clause, or sentence
thereof. Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985); Cameron, 618 S.W.2d at 540;
Barr, 562 S.W.2d at 849. We will not give one provision a meaning out of harmony or
inconsistent with other provisions, although that provision might be susceptible to such a
construction if standing alone. Barr, 562 S.W.2d at 849; Black v. American Bankers Ins. Co.,
478 S.W.2d 434, 437 (Tex. 1972).

 In determining who is a "dominant carrier," subsections (B)(i) and (B)(ii) both
focus on the nature and scope of the service provided. Thus, under subsection (B)(i) a provider
of any telecommunications service as to which the provider has sufficient market power to control
prices in a manner adverse to the public interest is a dominant carrier. Although the subsection
does not say so expressly, this logically means the provider is a dominant carrier as to the service
for which it has the requisite market power. Likewise, under subsection (B)(ii) a provider of local
exchange service is a dominant carrier. This logically means that a provider of local exchange
service is a dominant carrier as to the local exchange service it provides. Thus, even if the
Commission's interpretation of the phrase "as to such service" were correct (i.e., that it modifies
only the immediately preceding phrase, "within a certificated exchange area") that would simply
mean that subsection (B)(ii), like subsection (B)(i), does not expressly state the obvious.

 If there were any doubt about the correctness of this construction, it would be
erased by the following sentence contained in the same subsection: "Any such provider
determined to be a dominant carrier as to a particular telecommunications service in a market shall
not be presumed to be a dominant carrier of a different telecommunications service in that
market." PURA § 3(c)(2)(B). We believe that both subsection (B)(i) and subsection (B)(ii)
clearly encompass a procedure or definition for determining if a provider is a dominant carrier
as to "a particular telecommunications service." The Commission's interpretationthat a provider
of local exchange services is automatically a dominant carrier as to any other services it may
provide, including non-local exchange servicesflies directly in the face of the foregoing statutory
provision.

 The Commission argues, however, that the "shall not be presumed" provision
applies only to subsection (B)(i), and not to subsection (B)(ii), because only under subsection
(B)(i) is an actual "determination" of dominance made. We reject this view. In its own 1992
order adopting the amendments to rule 23.61, the Commission stated that "the provision of local
exchange service is one means by which a telecommunications utility is determined to be
dominant." 17 Tex. Reg. at 7884 (emphasis added). The Commission gives us no compelling
reason to reach the illogical result of applying the "shall not be presumed" provision to subsection
(B)(i) but not to subsection (B)(ii).

 Finally, the Commission asserts in the alternative that subdivision (B)(ii) is
ambiguous and that we should defer to the Commission's interpretation. See Tarrant Appraisal
Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993). However, such deference is permissible only
if the meaning of the statutory language is unclear or ambiguous. Id.; Citizens Nat'l Bank v.
Calvert, 527 S.W.2d 175, 180 (Tex. 1975); Meno v. Kitchens, 873 S.W.2d 789, 791 (Tex.
App.Austin 1994, writ denied). We conclude that PURA § 3(c)(2)(B) is not ambiguous in any
material respect and that the Commission's interpretation conflicts with the plain meaning of the
provision. Accordingly, we decline to defer to the Commission's interpretation. (8)

 Having concluded that the meaning of the disputed statutory provision is clear and
unambiguous, our inquiry is narrowed considerably. As this Court recently stated in Kitchens,


The plain-meaning rule is subject only to narrow exceptions. For example, we
should not "attribute to the Legislature an intention to work an injustice." State
v. Mauritz-Wells Co., 175 S.W.2d 238, 242 (Tex. 1943); see also State Highway
Dep't v. Gorham, 162 S.W.2d 934, 936 (Tex. 1942); Alvarado v. Gonzales, 552
S.W.2d 539, 542 (Tex. Civ. App.Corpus Christi 1977, no writ). Nor should we
construe a statute in a way that leads to foolish or absurd consequences. Estate of
Padilla v. Charter Oaks Fire Ins. Co., 843 S.W.2d 196, 199 (Tex. App.Dallas
1992, writ denied); Alvarado, 552 S.W.2d at 542. . . . The mere fact that a policy
seems unwise or inconsistent with other policies does not justify a departure from
the plain meaning of the legislative mandate. See, e.g., Railroad Comm'n v.
Miller, 434 S.W.2d 670, 672 (Tex. 1968).


873 S.W.2d at 792.

 Nonetheless, the Commission also argues that Southwestern Bell's interpretation
is inconsistent with section 18 of PURA. Chief among the Commission's arguments is that such
a construction would render PURA § 18(e) meaningless. As noted above, section 18(e) grants
the Commission authority "to promulgate rules and establish procedures applicable to local
exchange companies for determining the level of competition in specific telecommunications
markets and submarkets and providing appropriate regulatory treatment to allow local exchange
companies to respond to significant competitive challenges." PURA § 18(e)(1) (emphasis added). 
The section goes on to provide a list of factors that the Commission shall consider in an
evidentiary hearing to determine the level of competition in a market and to provide several
regulatory treatments available to the Commission. PURA § 18(e)(2), (3).

 From the foregoing, the Commission correctly argues that the purpose of section
18(e) can only be to provide relief to regulated providers who find themselves in competition with
providers of unregulated services. Since providers of local exchange services are, by definition,
dominant carriers and therefore regulated as to those services, the Commission correctly reasons
that section 18(e) cannot have been enacted to "level the playing field" for two providers whose
competition is in local exchange services, because in that instance both would be regulated and
no leveling would be needed. Likewise, where both competing providers are unregulated,
competitive market processes would presumably make relief for either one of them unnecessary.

 The Commission incorrectly assumes, however, that competition between a
regulated provider and an unregulated provider can exist only where (1) the services of both
providers do not constitute local exchange services, and (2) as to one of the providers (the local
exchange company), the non-local exchange services are regulated anyway. From this incorrect
assumption, the Commission reasons that the legislature must have intended for the Commission
to fully regulate any non-local exchange services being provided by local exchange companies. 
We disagree.

 The Commission overlooks the fact that advancing technology often allows newly
developed services that do not constitute local exchange services to be used by a customer in lieu
of traditional local exchange services. This allows direct competition between providers of
regulated local exchange services and providers of unregulated non-local exchange services. One
small example of such competition appeared in Dobie Mall. There, a small telecommunications
company set up, without having obtained the certificate of convenience and necessity required of
public utilities, a "switching system" within a privately owned building that housed residential,
office, and commercial tenants. Southwestern Bell, 745 S.W.2d at 920. The certificated local
exchange company for the area (which happened to be Southwestern Bell) challenged its right to
do so, arguing that the switching system constituted local exchange service. Although the system
provided by the smaller company clearly competed with the local exchange services provided by
the local exchange company, the Commission concluded that the smaller company's system did
not constitute "local exchange services." Id. at 924. This Court held that the Commission acted
within its authority in so concluding. Id. at 926.

 Thus, technological advances can produce direct competition between local
exchange services and non-local exchange services. The Commission itself recognized this in its
1989 report, "Status of Competition in Long Distance and Local Telecommunications Markets in
Texas":


The local exchange carriers continue to be dominant providers of basic telephone
service. However, advances in technology, improvements and expansion of
cellular or mobile telephone services, and changes in the regulation of the cable
television industry may increase competition in this market in the future. Also, a
limited amount of direct competition exists in the form of shared tenant service
providers.


It appears that the legislature also recognized the potential for this type of competition in its 1987
amendments to PURA § 18(e):


In determining the level of competition in a specific market or submarket, the
commission shall hold an evidentiary hearing to consider the following:


(A) the number and size of telecommunications utilities or other persons
providing the same, equivalent, or substitutable service;


(B) the extent to which the same, equivalent, or substitutable service is available;


(C) the ability of customers to obtain the same, equivalent, or substitutable
services at comparable rates, terms, and conditions;


(D) the ability of telecommunications utilities or other persons to make the same,
equivalent, or substitutable service readily available at comparable rates,
terms, and conditions; . . . .


PURA § 18(e)(2) (emphasis added). Implicit in the foregoing provision is the recognition that
"the same, equivalent, or substitutable services" can be provided not only by telecommunications
utilities, but also by "other persons" who are not telecommunications utilities.

 It is obvious, then, that an unregulated non-local exchange service can function
similarly to, and compete directly with, a regulated local exchange service. In such a situation,
the regulatory flexibility contemplated by PURA § 18(e), whether "pricing flexibility" or some
other form of relief, might be essential to the ability of the regulated local exchange company to
compete. Because we can envision at least one other set of circumstances in which flexible
regulatory treatment could be useful in this context, we conclude that Southwestern Bell's
interpretation of PURA § 3(c)(2)(B) does not render PURA § 18(e) meaningless. Accordingly,
neither this argument nor the Commission's policy arguments founded on other provisions of
section 18 of PURA show the plain meaning of subsection 3(c)(2)(B) to produce a result that is
unjust, unreasonable, or absurd.

 We conclude that the Commission's threatened application of rules 23.61 and
23.27, as revealed in its orders adopting the rules, is inconsistent with PURA, which directs that,
absent a determination of market dominance, local exchange companies are to be regulated as
dominant carriers only as to their provision of local exchange services. It does not necessarily
follow from this conclusion, however, that the rules themselves are invalid, in whole or in part. 
Indeed, as noted above, the actual language of the rules does not require that providers of local
exchange services be regulated as dominant carriers for all services they provide.

 This Court has stated that the following standard should be used to determine
whether a partially invalid agency rule should be severed, thus preserving the valid part:


If a part only is invalid, the severance decision depends on the court's
determination of two issues: (1) will the function of the regulatory statute as a
whole be impaired without the invalid part of the rule; and (2) is there any
indication that the agency would not have adopted the rule but for the invalid part? 
If the answer to either query is "yes," in the court's view, then severance is not
justified and the entire rule must fall.


Texas Dep't of Banking v. Restland Funeral Home, Inc., 847 S.W.2d 680, 683 (Tex. App.Austin
1993, no writ). We think a similar standard may be used for determining whether, and to what
extent, an agency's erroneous construction of its enabling statute can render invalid an agency rule
relying on that construction.

 Applying the foregoing standard to the present case, we have substantial doubt that,
but for its misconstruction of PURA, the Commission would have adopted subparagraph
(a)(17)(B) of rule 23.61 in the form that it did. See supra note 7. From the outset, the bulk of
this whole controversy has revolved around the parties' conflicting interpretations of the legal
consequences that would flow from these "exceptions" to the definition of local exchange service. 
It appears to us that a significant part of the Commission's overall plan in adopting the exceptions
in subparagraph (a)(17)(B) was the belief that the Commission's regulatory authority over local
exchange companies would not be diminished. We conclude, therefore, that subparagraph
(a)(17)(B) of rule 23.61 is so intertwined with the Commission's planned application of it that this
portion of the rule cannot survive its illegitimate foundation. (9)

 On the other hand, we do not find any indication that the Commission would not
have adopted the remainder of rule 23.61 without its erroneous construction of PURA. (10) Indeed,
it appears that virtually all of the remaining 1992 amendments to rule 23.61 are definitions having
no bearing whatsoever on the substance of this dispute. Nor does it appear that the function of
PURA or the remainder of rule 23.61 would be impaired without subparagraph (a)(17)(B).

 Rule 23.27 was, as stated earlier, adopted to implement the legislative command
in PURA § 18(e)(1) that the Commission "promulgate rules and establish procedures applicable
to local exchange companies for determining the level of competition in specific
telecommunications markets and submarkets and providing appropriate regulatory treatment to
allow local exchange companies to respond to significant competitive challenges." As we have
discussed above, rule 23.27 necessarily contemplates the situation in which a regulated service
provided by a local exchange company is in competition with an unregulated service provided by
a competitive access provider. Indeed, the rule is expressly designed to establish procedures
whereby a local exchange company in such a competitive position can apply to the Commission
for special regulatory treatment to enable it to meet such competition.

 It is true that in promulgating rule 23.27, the Commission was of the mistaken
opinion that every service provided by a local exchange company would be regulated. The result
of our holding today is that some services provided by a local exchange company may not be
regulated because they do not constitute local exchange services. Nevertheless, it is also true, as
we noted earlier, that some regulated services provided by local exchange companies may face
competitive challenges from unregulated services provided by competitive access providers. In
PURA § 18(e), the legislature has specifically instructed the Commission to adopt rules and
procedures for identifying and dealing with such situations. The fact that the Commission adopted
those procedures in rule 23.27 under the mistaken impression that they would be needed more
often than they will under our holding does not, in our view, create any doubt that the
Commission would have adopted them. The procedures will still be needed in the same type of
situation as that contemplated by the Commission. We find nothing in the record indicating that
the Commission would not have adopted the procedures contained in rule 23.27 but for its
erroneous interpretation of PURA.

 In summary, we hold that the Commission's threatened application of rules 23.61
and 23.27, as discussed herein, is invalid. We further hold that there is substantial reason to
believe the Commission would not have adopted subparagraphs (a)(17)(B) and (a)(17)(C) of rule
23.61 in their current form but for its erroneous interpretation of PURA. We also hold, however,
that there is no reason to believe the Commission would not have adopted the remaining
provisions of rule 23.61 and all of rule 23.27 but for its erroneous interpretation of PURA. 
Finally, we hold that subparagraphs (a)(17)(B) and (a)(17)(C) may properly be severed from the
remainder of rule 23.61.

 We sustain Southwestern Bell's first point of error. Because of our disposition of
this point, we do not address Southwestern Bell's second point of error.


CONCLUSION


 We reverse the portion of the trial court's judgment declaring valid the threatened
application of rules 23.61 and 23.27 as discussed herein; we render judgment declaring that the
Commission's threatened application is invalid. We further reverse that portion of the trial court's
judgment declaring subparagraphs (a)(17)(B) and (a)(17)(C) of rule 23.61 valid as adopted, and
we sever those subparagraphs from the rest of the rule; we render judgment declaring
subparagraphs (a)(17)(B) and (a)(17)(C) of rule 23.61 invalid as adopted. We affirm the
remainder of the trial court's judgment.



 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones

Reversed and Rendered in Part; Affirmed in Part

Filed: December 7, 1994

Publish
1. [1] All citations in this opinion are to the current APA rather than the former Administrative
Procedure and Texas Register Act because the recent codification did not substantively change the
law. Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 47, 1993 Tex. Gen. Laws 583, 986.
2.   Parties who intervened as plaintiffs were GTE Southwest, Incorporated and Texas
Statewide Telephone Cooperative, Inc. Along with Southwestern Bell, these parties are now
appellants.

 Parties who intervened as defendants were AT&T Communications of the Southwest,
Inc.; MCI Telecommunications Corp.; TEXALTEL (Texas Association of Long Distance
Telephone Companies); Digital Direct of Dallas, Inc.; Sprint Communications Co., L.P.;
Teleport Communications Group; MFS Communications Co., Inc.; Time Warner
Entertainment Co., L.P.; and American Petroleum Institute. Along with the Commission,
these parties are now appellees.

 For simplicity, we will refer to appellants collectively as "Southwestern Bell" and to
appellees collectively as "the Commission."
3.   Non-dominant telecommunications utilities may also be regulated by the Commission,
but to a lesser extent. See PURA §§ 3(c)(2)(A), 18(c).
4.   PURA does, however, define "local exchange company" as "a telecommunications utility
certificated to provide local exchange service within the state." PURA § 3(v).
5.   We believe the new wording of amended rule 23.61(a)(17)(A) did not substantially alter
the meaning of the previous rule, but was primarily a clarification. Moreover, although
amended rule 23.61 is one of the two rules that Southwestern Bell challenges, subparagraph
(a)(17)(A) of the rule is not part of the dispute.
6.   As promulgated in 1992, subparagraph (a)(17)(B) of amended rule 23.61 provided:


(B) Notwithstanding subparagraph (A) of this paragraph, the following
services are not local exchange service:

 (i) services for which local exchange carriers have been granted authority
to enter into customer-specific contracts pursuant to the Act [PURA],
§ 18(e)(3)(B), as those services are described in § 23.27 of this title (relating to
Rate-Setting Flexibility for Services Subject to Significant Competitive
Challenges);

 (ii) services for which a local exchange carrier has been granted authority
to engage in pricing flexibility pursuant to § 23.27 of this title;

 (iii) private line services and virtual private line services;

 (iv) resale or sharing of local exchange service, where that resale or
sharing is allowed by commission approved tariffs;

 (v) dark fiber services;

 (vi) non-voice data transmission services;

 (vii) dedicated and virtually dedicated access services;

 (viii) any service initially provided within an exchange, after adoption of
this rule, if first provided by an entity other than the local exchange carrier(s)
certificated to provide service within that exchange; and

 (ix) any service that the commission determines by final order in a
docketed proceeding is not local exchange service.


17 Tex. Reg. at 7894.

 Rule 23.61 was again amended in 1993 and 1994. 18 Tex. Reg. 3403 (1993); 19 Tex.
Reg. 500 (1994). Because these amendments do not alter the meaning of the rule, we will
refer to the 1992 version on which Southwestern Bell filed suit.
7.   In its brief to this Court, the Commission gives the following basis for its adoption in
1992 of subparagraph (a)(17)(B) of rule 23.61: "In light of Dobie Mall, . . . the Commission
determined that the day had come to amend its rule to clarify which services do not constitute
`local exchange service.'"
8.   We do not address the extent of the Commission's discretion in determining if a
particular telecommunications service constitutes a "local exchange service," whether
provided by a local exchange company or a competitive access provider. We hold only that
a provider of local exchange services is not, merely by virtue of its provision of such services,
automatically subject to full Commission regulation in its provision of other services that do
not constitute local exchange services.
9.   If nothing else, subparagraph (a)(17)(B) of rule 23.61 would likely fail the "reasoned
justification" requirement of APA § 2001.033, because the Commission's order adopting the
rule sought to justify that portion of the rule on an erroneous construction of PURA.
10. The only exception to this statement is subparagraph (a)(17)(C) of rule 23.61, which
states: "(C) The provisions of subparagraph (B) of this paragraph shall be liberally
construed to encourage a competitive marketplace." This part of the rule would obviously
be meaningless without subparagraph (a)(17)(B).