**RAILWAY EXP. AGENCY, Inc. v. FERGUSON.**

No. 12296.

Court of Civil Appeals of Texas. San Antonio.

Sept. 5, 1951.

Rehearing Denied Oct. 3, 1951.

Keys & Holt, Corpus Christi, for appellant.

North & Blackmon, Corpus Christi, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by A. T. Ferguson against Railway Express Agency, Inc., for alleged damages to a carload of spinach. The trial was before the court and resulted in judgment in plaintiff's favor for damages in the sum of $930, plus interest in the sum of $158.10, making a total recovery in the sum of $1,088.10, from which judgment defendant, Railway Express Agency, Inc., has prosecuted this appeal.

By its first point appellant presents the contention that there is no evidence of probative force to show that the shipment was delayed en route. The carload of spinach originated at Eagle Pass, Texas, where its loading was completed at 9 p. m. March 26, 1948. A Uniform Express Receipt was issued by appellant showing, among other things, the following instruction, "open routed, New York Central delivery." S. W. Renner, a witness for appellant, testified that the car left Eagle Pass at 2:00 a. m. March 27, 1948, on the earliest train that could have moved this car out of Eagle Pass, moving on T. & N. O. train 228; that it arrived in San Antonio at 12:10 p. m., March 27th, and left San Antonio at 7:55 p. m., March 27th, on Missouri Pacific train 38, arriving in St. Louis at 11:29 p. m., March 28th, that it left St. Louis at 1:13 a. m., March 29th, or 45 minutes after it arrived, on New York Central train 446; that it arrived in Cleveland, Ohio, at 5:00 p. m., March 29th, and left Cleveland, Ohio, at 11:59 p. m. the same day, on a New York Central special, arriving in New York at 9:45 p. m., March 30th. He further testified that there was no other train available from the time this car was loaded until the time it arrived in New York, which could have or would have moved the car to New York at an earlier date; that the Uniform Express Receipt issued on this car called for a delivery to the New York Central, and that this instruction was carried out by delivering the car to the New York Central in St. Louis, which was usual and customary. He further testified that, "We are not allowed to place express cars on every passenger train that runs." The receipt provided, among other things, that "cars will be handled only on trains designated by the railroad companies."

W. M. White, a witness for appellee, testified that he was familiar with train schedules throughout the United States, and that this car of spinach arrived two

days late in New York. However, it is clear from his testimony that he was not taking into consideration that express cars cannot be handled by every train that runs and the Uniform Express Receipt on which this shipment was made provided that it was "subject to the classifications and tariffs in effect on date hereof." Appellant introduced in evidence a portion of Rule 23 of the Railway Express classification No. 33, as filed with the Interstate Commerce Commission, which reads as follows: "Cars will be handled only on trains designated by the Railroad Companies."

■ This provision became a part of the contract between the shipper and the agency and was binding upon both. White testified that there was a train out of Eagle Pass at 10:45 on the night of March 26, 1948, and that this car should have left at that time, but the uncontradicted evidence shows that the 10:45 was not such a train as would handle this car of spinach. White's testimony seems to indicate that if this car had been sent by freight instead of express it would have arrived sooner, but this proves nothing. This was an express car and was handled in keeping with the contract existing between the parties. The witness Renner gave in detail just how this car was handled and shows that there was no delay caused by the express agency. Appellee did not discharge the burden resting upon him of showing that appellant did not handle this car of spinach with reasonable dispatch. We sustain appellant's first point. Atlantic Coast Line Ry. Co. v. Georgia Packing Co., 5 Cir., 164 F.2d 1; 9 Am.Jur. 743, 8 Tex.Jur. 401; 13 C.J.S., Carriers, § 216, p. 421; Barrett v. Van Pelt, 268 U.S. 85, 45 S.Ct. 437, 69 L.Ed. 857.

Appellant's second point is that there is no evidence of probative force to show that the shipment was delayed after arrival in New York.

■ The undisputed evidence shows that the car of spinach arrived in New York at 9:45 p. m., on March 30, 1948, and was not placed until 3:00 a. m., March 31, 1948. This placing was too late for the market of March 31st, which opened at 1:00 a. m. The witness Renner testified that the car was held after arrival in New York on the orders of the consignee, which testimony was not denied. There was a notation on the Bill of Detention as follows: "Notice given 3/31, time 3:05 A.M." The notation is insufficient to establish any fact. It does not show who gave notice or to whom it was given, or what kind of notice it was. In the absence of any proof to the contrary, we must presume that the car was held after its arrival in New York at the request of consignee, and appellant would not be responsible for this delay. Wilkins v. Gulf C. & S. F. Ry. Co., Tex. Civ.App., 260 S.W. 214; 8 Tex.Jur. 401, 13 C.J.S., Carriers, §§ 216, 217, p. 421, p. 430.

■ Appellant's third point is that there is no evidence of probative force to show that the spinach was damaged in shipment.

Appellee offered in evidence an inspection certificate by the United States Department of Agriculture dated March 26, 1948, at Eagle Pass, showing that the spinach was U. S. No. 1 grade, defects within tolerance, and a certificate of inspection by the National Inspection Service showing statements concerning the condition of the spinach at 10:00 p. m. on March 31, 1948. Appellant introduced in evidence an inspection report by the Railroad Perishable Inspection Agency showing statements concerning the condition of the spinach in New York made at the same time as that made by the National Inspection Service.

B. G. Slay testified concerning these inspection reports to the effect that they showed that the spinach arrived in as good condition as when received. He testified that it was No. 1 spinach when it left Texas and when it arrived in New York, and that on both occasions the defects were within tolerance. There was evidence of white rust and seed stems, but Slay stated white rust is a field disease and that seed stems do not increase in length after the spinach is cut. There were some broken hoops and side staves, but all packages were received as in good condition, none

needed recoopering. We sustain appellant's third point.

The judgment of the trial court is reversed and judgment here rendered that appellee take nothing and pay all costs of this and the trial court.