**COMMON CARRIER MOTOR FREIGHT ASSOCIATION, INC., et al., Appellants,**

v.

**NCH CORPORATION, et al., Appellees.**

No. 3–89–170–CV.

Court of Appeals of Texas, Austin.

April 18, 1990.

Rehearing Overruled May 23, 1990.

John R. Whisenhunt, Robinson, Felts, Starnes, Angenend & Mashburn, Austin, for Common Carrier Motor Freight Ass'n, Inc., Big State Freight Lines, Inc., Brown Express, Inc., Cent. Freight Lines, Inc., and Herder Truck Lines, Inc.

Jim Mattox, Atty. Gen., Douglas Fraser, Asst. Atty. Gen., Austin, for RR. Com'n of Texas and its Members.

Owen T. Kinney, McElroy & Sullivan, Austin, for NCH Corp., Nat. Small Shipments Traffic Conference, Inc., and Health and Personal Care Distribution Conference, Inc.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellants Common Carrier Motor Freight Association, Inc. (carriers) and the Railroad Commission seek to set aside the judgment of the district court of Travis County. By its judgment, the district court overturned the Commission's order directing the issuance of tariffs that would limit the liability of carriers for damage done to freight in their possession. Appellees are several shipper associations (shippers). This Court will affirm the judgment.

The Commission's order directed the carriers to issue and publish Tariff 500. The relevant part of Tariff 500, the so-called "automatic release" provision, provides that the carrier's liability for damaged cargo is limited to fifty dollars per shipment unless the shipper declares in writing before tender a higher value for the cargo. The automatic release provision of Tariff 500 reversed the common law rule that the carrier is responsible for the total damage to cargo. *Southern Pac. Ry. Co. v. Maddox*, 75 Tex. 300, 12 S.W. 815, 817 (1889).

The shippers contended in district court that the automatic release of liability provision was contrary to Tex.Rev.Civ.Stat.Ann. art. 883 (Supp.1990). The district court agreed and concluded that the Commission's order sanctioning the automatic release of liability provision was in excess of the Commission's authority because it purported to limit the carrier's liability in the absence of the shipper's written consent.

On appeal, appellants challenge the district court's conclusion that art. 883 prohibits the Commission's adoption of the automatic release provision. In support of their challenge, appellants claim (1) that art. 883, read in conjunction with Tex.Bus. & Com.Code Ann. § 7.309 (1968), authorizes the automatic release of liability, and (2) that because all tariffs are incorporated by law into the contract between the shipper and carrier, the automatic release of liability is, indeed, a part of the written agreement as contemplated by art. 883.

Texas Rev.Civ.Stat.Ann. art. 882 (1964), provides that carriers be held liable as they are at common law, except as otherwise provided. Article 883 sets forth the one exception to this rule:

... [p]rovided, however, that the provisions hereof respecting liabilities of carriers as it exists at common law for loss, damage, or injury to ... goods, wares, and merchandise shall not apply to property received for transportation concerning which the carriers shall have been or shall hereafter be expressly authorized or required by order of the Railroad Commission of Texas to establish and maintain rates dependent upon the value declared in writing by the shipper of the property or agreed upon in writing as the released value of the property, in which case, such declaration or agreement shall have no effect other than to limit liability and recovery to an amount not exceeding the value so declared or released, and so far as relates to values, shall be valid and is not hereby prohibited....

Section 7.309(b) provides:

Damages may be limited by a provision that the carrier's liability shall not exceed a value stated in the document if the carrier's rates are dependent upon value and the consignor by the carrier's tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed he is otherwise advised of such opportunity; but no such limitation is effective with respect to the carrier's liability for conversion to its own use.

Application of § 7.309 to the tariff provision in this appeal, however, is governed in turn by Tex.Bus. & Com.Code Ann. § 7.103 (1968) which expressly provides that provisions in Chapter 7 of the Code are made subject to regulatory statutes. Accordingly, § 7.309 is subject to the terms of art. 883. Section 7.309, then, cannot authorize limitation of carrier liability in contravention of art. 883.[1]

---

1. Appellants rely upon *Elizabeth–Perkins, Inc. v. Morgan Exp., Inc.*, 554 S.W.2d 216 (Tex.Civ.App. 1977, no writ). We recognize that the tariff in

*Elizabeth–Perkins* was substantially similar to the tariff at issue here. However, the court in *Elizabeth–Perkins* was not called upon to ad-

Contrary to appellants' suggestion, this Court does not regard art. 883 to be ambiguous. Article 883 expressly provides that, in general, the common law rule of carrier responsibility applies. At common law, the carrier is fully liable for all damage to cargo in its possession under circumstances that impose an obligation. *Southern Pac. Ry. Co.*, 12 S.W. at 817. Nevertheless, the legislature in art. 883 provided one exception: only a written exception on the bill of lading will release the carrier from full liability (a carrier may "establish and maintain rates dependent upon the value declared in writing by the shipper").

The legislative intent *as expressed in the statute* must be given controlling importance. *Citizens Nat. Bank v. Calvert*, 527 S.W.2d 175, 180 (Tex.1975). An agency construction of the statute must, of course, be consistent with the statutory wording and only in those instances in which the plain meaning of the statute works an absurdity may it be disregarded. *Id.* at 180.

In sum, this Court concludes that the plain meaning of the language of art. 883 does not empower the Commission to permit the carriers to publish a tariff containing the automatic release of liability provision.

Appellants' second argument concerns whether a tariff may be considered a "writing" within the meaning of art. 883. A bill of lading generally expresses that it is "subject to the provisions of governing tariffs." Regulations and tariffs promulgated and approved by the regulating agency coupled with the bill of lading constitute the contract between the shipper and the carrier. *See Railway Exp. Agency, Inc. v. Ferguson*, 242 S.W.2d 462, 464 (Tex.Civ. App.1951, writ dism'd); *Continental Transfer & Storage Co. v. Swann*, 278 S.W.2d 413, 415 (Tex.Civ.App.1954, writ dism'd); *see also Modern Whsle. Florist v. Braniff Int. Airways, Inc.*, 342 S.W.2d 225, 227 (Tex.1960). Appellants suggest that the bill of lading along with the automatic release provision adopted by Tariff 500 con-

stitutes a "written agreement" pursuant to art. 883. This Court does not agree.

As previously written, art. 883 plainly provides that the waiver of liability, *itself*, must be a written term in the specific contract. If it is incorporated only through a reference to "tariffs," then it is merely implied in the contract and not a written provision by the shipper.

Appellants' points are overruled.

The judgment of the district court is affirmed.

CARROLL, J., not participating.

---

dress the validity of the tariff, but instead to examine the effect of the tariff on a particular claim. The opinion in *Elizabeth–Perkins* does not support the proposition that § 7.309 may

abrogate a statutory constraint on what may be included in a tariff; rather, it only concerns the effect of § 7.309 on a specific question regarding a presumably valid tariff.