COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-228-CV

 

 

TEXAS SPECIALTY TRAILERS, INC.;                                     APPELLANTS



J. MARVIN WILLIAMS, JR.; 

AND RICHARD KELLERMAN 

D/B/A JK TRUCKING

                                                   V.

 

JACKSON & SIMMEN DRILLING                                              APPELLEES

COMPANY AND LEXINGTON 

INSURANCE COMPANY

                                              ------------

 

              FROM THE 271ST DISTRICT COURT OF JACK COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








In eight issues, appellants Texas Specialty
Trailers, Inc., J. Marvin Williams, Jr., and Richard Kellerman d/b/a JK
Trucking appeal a judgment rendered on a jury verdict awarding appellee Jackson
& Simmen Drilling Company approximately $3.2 million in damages.  We affirm in part, reverse and render in
part, and reverse and remand in part.

                                         I.    Background

In September 2005, Jackson & Simmen Drilling
Company (J&S) owned a drilling rig that was stored in Palo Pinto
County.  Because J&S had a contract
with an oil company to drill wells in Comanche County, J&S needed to
transport the rig to that county. 
J&S contacted companies that had hauled its rig in the past, but
none were available to haul the rig to Comanche County.  At the suggestion of one of the companies,
Jerry Jackson, a J&S principal, contacted Williams, a shareholder and
manager for Texas Specialty Trailers, Inc. (Texas Specialty), about hauling the
rig.  After inspecting the rig, Williams
telephoned Jackson to inform him that Texas Specialty Acould
move@ it and
offered to do the job for $7,000. 
Jackson accepted Texas Specialty=s
offer.  Thereafter, Texas Specialty
contracted with an independent contractor, Richard Kellerman d/b/a JK Trucking
(Kellerman), to drive the truck pulling the trailer on which the rig was to be
loaded.








On September 22, 2005, Williams and Kellerman met
with J&S employees in Palo Pinto County to load the rig.  While the rig was being loaded, Williams and
Kellerman determined that it would not sit safely on the trailer because the
rig was too wide for the trailer: when being positioned atop the trailer, the
rig=s wheels
would contact the trailer=s wheels.  Someone from J&S then offered Williams
and Kellerman the use of pipe grates as a platform for the rig=s tires
so that they would not come into contact with the trailer.  Williams and Kellerman agreed to do this, and
the rig was loaded using the pipe grates. 
Williams then chained the rig to secure it to the trailer.  Kellerman inspected the load and satisfied
himself that it was safe before driving out. 

Kellerman departed for Comanche County.  Just outside of Strawn, in Palo Pinto County,
Texas, however, the trailer carrying the rig separated from the vehicle hauling
it.  The rig rolled off the trailer and
into a ditch where it fell on its side. 
The rig was damaged.  As a result,
J&S was not able to drill the wells in Comanche County.

J&S sued Texas Specialty, Williams, and
Kellerman in Jack County for negligence, breach of contract, and violations of
the Texas Deceptive Trade PracticesBConsumer
Protection Act (DTPA).[2]  After a trial, the jury found Texas
Specialty, Williams, and Kellerman liable for negligence and found that Texas
Specialty and Williams violated the DTPA. 
The proportionate responsibility of J&S and Jackson was not submitted
to the jury.








Based on their negligence and DTPA-violation
findings, the jury awarded J&S $750,000 in repair or replacement damages,
$2,475,000 in lost profits, and $29,800 in other damages.  The trial court rendered judgment on the
verdict, awarding damages divided between Texas Specialty, Williams, and
Kellerman based on their percentages of responsibility as determined by the
jury.  The judgment also awarded J&S
prejudgment interest and $333,750 in attorneys=
fees.  This appeal followed.

                                             II.    Issues

In eight issues, appellants
complain on appeal that (1) the trial court erred in denying the motion to
transfer venue filed jointly by Texas Specialty and Kellerman, (2) the evidence
was insufficient to support the jury=s
verdict on J&S=s negligence and DTPA claims,
(3) Williams should not be individually liable for negligence, (4) the trial
court erroneously refused to submit the proportionate responsibility of J&S
and Jackson to the jury, and (5) the trial court erred in awarding prejudgment
interest on damages to repair or replace the rig and on lost profits.

We must address the sufficiency of the evidence
issues and Williams=s individual liability before
determining the other issues.[3]








                              III.    Sufficiency of the Evidence

A.     Standard of Review

We may sustain a legal sufficiency challenge only
when: (1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.[4]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.[5]








Anything more than a scintilla of evidence is
legally sufficient to support the finding.[6]  When the evidence offered to prove a vital
fact is so weak as to do no more than create a mere surmise or suspicion of its
existence, the evidence is no more than a scintilla and, in legal effect, is no
evidence.[7]  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.[8]

When reviewing an assertion that the evidence is
factually insufficient to support a finding, we set aside the finding only if,
after considering and weighing all of the evidence in the record pertinent to that
finding, we determine that the evidence supporting the finding is so weak, or
so contrary to the overwhelming weight of all the evidence, that the answer
should be set aside and a new trial ordered.[9]

B.     Negligence








In their seventh issue,
appellants assert that the evidence is legally and factually insufficient to
show that their failure to properly load, secure, and chain the rig proximately
caused damage to the rig because J&S failed to present evidence of the
amount of deceleration force exerted on the rig during the accident.  According to appellants, without evidence
quantifying the force of deceleration, there is no evidence of cause-in-fact
because the force of deceleration may have been so great that the rig would
have left the trailer even if the rig had been properly loaded and secured.

Proximate cause, as an element of a negligence
claim, entails both cause-in-fact and foreseeability.[10]  The test for cause-in-fact, or Abut for@
causation, is whether the negligent act or omission was a substantial factor in
bringing about the injury and whether the injury would have occurred without
the act or omission.[11]  Although cause-in-fact can be established by
circumstantial evidence, it cannot be established by mere conjecture, guess, or
speculation.[12]








At trial, Williams agreed that Texas Specialty is
responsible and would Atake responsibility@ for the
damage to the rig.  In addition, Anita
Kerezman, a vehicle operations and safety specialist, testified that Texas
Specialty and Kellerman caused damage to the rig by failing to properly secure
the rig, to block the rig as federal and state regulations required, and to
load the rig so as to properly distribute its weight across the trailer.  Kerezman further opined that, had the load
been properly secured and blocked, the rig would not have rolled off the
trailer regardless of any other equipment failures.  When questioned about the alleged failure of
the pipe grates that were used to support the rig above the trailer=s
wheels, Kerezman testified that this Adoesn=t matter@ with
respect to the accident=s causation because Aif the
load is properly secured and blocked, even if there is a failure in some part
of the load, it=s not going to compromise the integrity
of the entire load and we don=t lose
this rig.@

Kerezman testified that, under applicable federal
regulations, appellants were required to use cargo securement devices and systems
capable of withstanding a 0.8g deceleration in the forward direction.[13]  She conferred with a mechanical engineer/accident
reconstructionist and, after examining photographs and the materials, concluded
that the accident produced no mechanism operating on the load that could have
exceeded 0.8g in forward deceleration.  Therefore,
according to Kerezman, had appellants complied with regulations and properly
secured and blocked the load, the chains would have held and the rig would not
have left the trailer. 








We hold that Kerezman=s
testimony constitutes both legally and factually sufficient evidence to support
a finding of proximate cause.[14]  Accordingly, we overrule appellants= seventh
issue.

C.     DTPA

In their second issue,
appellants assert that the evidence is legally and factually insufficient to
support the jury=s findings on J&S=s DTPA
claims,[15]
based in part on the testimony by Jackson that Williams made two separate
statements:  (1) that Texas Specialty Acould
move@ the
rig; and (2) that the rig Awould
ride.@  Appellants argue that both of Williams=s
statements were merely statements of the parties= contract
and, therefore, not deceptive acts.  They
further contend that the statement that the rig Awould
ride@ is
merely an expression of opinion.








The mere failure to perform a term of a contract
is not a DTPA violation.[16]  To distinguish between deceptive acts and a
breach of contract, courts analyze whether there was some representation made Aoutside
the contract.@[17]  If a defendant=s
representation was only that its performance would be of a certain quality, it
is not a DTPA violation and breach of contract would be the only action
available.[18]  Whether the facts, once ascertained,
constitute a misrepresentation under the DTPA is a question of law.[19]








Williams=s
statement that Texas Specialty Acould
move@ the rig
was not merely a statement of its contract with J&S.  It was not a representation that Texas
Specialty would fulfill its contractual obligation to haul the rig or that its
performance in hauling the rig would be of a certain quality.  Rather, the statement was a representation that
Texas Specialty had the expertise and ability to move the rig, which the
evidence shows was false,[20]
that was made prior to the formation of J&S=s
contract with Texas Specialty.  As a
matter of law, the statement that Texas Specialty Acould
move@ the rig
was, therefore, outside the parties=
contract and a deceptive act.[21]








Appellants argue that J&S no longer could
rely to its detriment upon Williams=s
statement after Williams subsequently stated Awe
cannot haul it@ while attempting to load the
rig.  However, the record shows this
statement was made in reference to a lack of available equipment on hand, not
to Texas Specialty=s ability to move the rig as it
had represented.  After Williams made the
statement, he and Kellerman loaded the rig with the use of borrowed pipe grates
as a type of platform for the rig=s wheels
and attempted to haul it to Comanche County, as agreed.

Because the evidence is sufficient to support the
jury=s DTPA
finding that the misrepresentation that Texas Specialty Acould
move@ the rig
was a deceptive act, we overrule appellants= second
issue.[22]

                   IV.    Williams=s
Individual Liability for Negligence

In their sixth issue, appellants
assert that Williams cannot be personally liable for negligence because he had
no duty in his individual capacity to J&S. 
The existence of a duty is a question of law.[23]  AA
corporate officer or agent can be liable to others . . . for his or her own
negligence.  However, individual
liability arises only when the officer or agent owes an independent duty of
reasonable care to the injured party apart from the employer=s duty.@[24]








J&S concedes that Athe
individuals participating in loading and securing the rig@ owed no
duty to J&S.  Moreover, J&S does
not contest that Williams=s acts relating to the loading
and hauling of the rig were done in his capacity as a corporate officer or that
he was performing duties belonging to Texas Specialty.  Accordingly, we conclude that Williams owed
no duty and cannot be personally liable for negligence.[25]  We sustain appellants= sixth
issue.[26]

Having considered all of appellants=
rendition points, we now turn to the venue, proportionate responsibility, and
prejudgment interest issues.

                                            V.    Venue

In their first issue, appellants contend that the
trial court erred in denying Texas Specialty and Kellerman=s motion
to transfer venue.

A.     Standard of Review








A plaintiff is accorded the right to choose
venue; as long as suit is initially filed in a county of proper venue (i.e.,
the county is at least a permissive venue and no mandatory provision applies),
the plaintiff=s venue choice cannot be
disturbed.[27]  If the dispute is between two counties of permissive
venue, transferring the case is improper.[28]  A plaintiff=s choice
of venue stands unless challenged by a proper motion to transfer venue.[29]  Once challenged, the plaintiff has the burden
to present prima facie proof that venue is maintainable in the county of suit.[30]  The action must remain in the county of suit
if the plaintiff selected a county of proper venue and supported the selection
with prima facie proof supporting venue there.[31]








In reviewing a venue decision, the appellate
court must conduct an independent review of the entire record, including, where
applicable, the trial on the merits, to determine whether any probative
evidence supports the trial court=s venue
decision.[32]  Courts review the evidentiary record in the
light most favorable to the venue ruling; however, no deference is given to the
trial court=s application of the law.[33]  An appellate court cannot review the
sufficiency of the evidence supporting the plaintiff=s venue
choice.[34]  If there is any probative evidence supporting
venue in the county of suit, a transfer should be denied even if the evidence
preponderates to the contrary.[35]  However, conclusive evidence to the contrary
can destroy the Aprobative evidence.@[36]

A[A]n appellate court must
reverse (there cannot be harmless error) if other evidence in the record, even
evidence adduced after venue was determined, destroys the prima facie proof on
which the trial court relied.@[37]  Appellate review of the entire record, as
required by statute,[38]
thus Apreserves
the plaintiff=s right to select and maintain
suit in a county of proper venue, and it protects the defendant from fraud or
inaccuracy at the pleading stage.@[39]








B.     Governing Venue Statute

J&S asserts that venue is
proper in Jack County under two permissive venue statutes:  (1) the general venue rule contained in Texas
Civil Practice and Remedies Code section 15.002(a)(1), which provides that
venue is proper in the county where Aall or a
substantial part of the events or omissions giving rise to the claim occurred@;[40]
and (2) the DTPA=s venue provision, which
provides that venue is proper in any Acounty
in which the defendant or an authorized agent of the defendant solicited the
transaction made the subject of the action at bar.@[41]








Addressing the general venue rule under section
15.002(a)(1), to determine whether a Asubstantial
part@ of the
events giving rise to a claim occurred in the chosen venue, courts examine the
record in light of the claim=s
essential elements.[42]  Thus, a DTPA plaintiff is required to
establish for venue purposes the following elements:  (1) the plaintiff is a consumer; (2) the
defendant committed an action or omission listed as a violation under DTPA
section 17.46(b); (3) the plaintiff detrimentally relied upon the wrongful
action or omission; and (4) the wrongful action or omission was a producing
cause of the plaintiff=s damages.[43]

C.     Evidence Supports Venue in Jack County

The evidence in this case shows
that Jackson was in Jack County during the telephone conversation in which
Williams made the misrepresentation that Texas Specialty Acould
move@ the rig
and that Jackson, on behalf of J&S, indeed entered into the contract with
Texas Specialty while in Jack County. 
Texas Specialty contends, however, that Williams=s
representation is not actionable under the DTPA, and that, even if it is, the
facts surrounding it are not sufficient to meet the substantiality requirement.








We have already held that Williams=s
misrepresentation that Texas Specialty Acould
move@ the rig
is an actionable DTPA violation.[44]  Thus, to determine whether venue is proper in
Jack County, we must determine whether the facts surrounding that actionable
misrepresentation satisfy section 15.002(a)(1)=s
substantiality requirement.[45]  In so doing, we are mindful that our task is
not to determine the best venue, but to determine whether any probative
evidence supports the trial court=s venue
determination under section 15.002(a)(1).[46]








In making venue determinations, Texas courts have
held that the receipt of telephone calls and letters in a particular county are
facts that weigh in favor of finding venue to be appropriate in that county.[47]  Here, it is undisputed that Jack County is
where Jackson received the telephone call in which Williams told him that Texas
Specialty Acould move@ the
rig.  Jackson also testified that he
relied upon this representation, and it is undisputed that Jack County is where
Jackson acted by placing the telephone call in which he accepted Texas
Specialty=s offer to move the rig.  Viewing these facts in light of the entire
record, we conclude that they constitute probative evidence that a substantial
part of J&S=s DTPA claim occurred in Jack
County.  We overrule appellants= first
issue.[48]

                              VI.    Proportionate Responsibility

In their third, fourth, and fifth issues,
appellants assert that the trial court erred in failing to find J&S and
Jackson to be responsible parties and, therefore, deprived appellants of the
right to submit their proportionate responsibility to the jury.[49]








We review alleged error in the jury charge for
abuse of discretion, which occurs only when the trial court acts arbitrarily,
unreasonably, or without reference to guiding rules or principles.[50]  If an issue is properly pleaded and is
supported by some evidence, a litigant is entitled to have controlling
questions submitted to the jury.[51]

A.     Texas Civil Practice and Remedies Code Chapter 33

The proportionate responsibility
provisions of civil practice and remedies code Chapter 33 apply to Aany
cause of action based on tort@ and to Aany
action brought under the [DTPA]@ Ain which
a defendant, settling person, or responsible third party is found responsible
for a percentage of the harm for which relief is sought.@[52]

Under Chapter 33, submission of a comparative
fault question regarding the conduct of any person is not allowed Awithout
sufficient evidence to support the submission.@[53]  Because comparative responsibility involves
measuring the parties= comparative fault in causing
the plaintiff=s injuries, it requires a
preliminary finding that the plaintiff was in fact contributorily negligent.[54]








Contributory negligence contemplates an injured
person=s
failure to use ordinary care in regard to his or her own safety[55]
and requires proof that the plaintiff was negligent and that this negligence
was the proximate cause of his or her injuries.[56]  The standards and tests for determining
contributory negligence are the same as those for determining negligence, and
the same rules of law apply to both.[57]

B.     Duty to Safely Load and Secure the Rig








To bring a negligence action in
Texas, a plaintiff must present evidence establishing a legal duty, breach of
that duty, and damages proximately caused by the breach.[58]  The existence of a legal duty is a question
of law for the court to decide, determined from the facts surrounding the
occurrence in question.[59]  Liability cannot be imposed if no duty
exists.[60]  Moreover, when a duty exists, to have a
question submitted to the jury, the evidence must raise a material fact issue.[61]

J&S and Jackson contend, among other
arguments, that, even if they participated in the loading process, they are not
responsible parties and that the trial court was correct in refusing to submit
issues to the jury regarding their responsibility for damage to the rig because
Texas Specialty and Kellerman had non-delegable duties under federal and state
law to load and secure the rig safely.

1.     General
Rule of Carrier Liability








It is undisputed that Texas Specialty and
Kellerman were subject to federal and state regulations regarding safely
loading and securing the rig.[62]  Under applicable federal regulations, the
carrier is solely responsible for distributing and loading cargo.[63]  The Texas Transportation Code provides that Athe
duties and liabilities of a carrier in this state and the remedies against the
carrier are the same as prescribed by the common law@ unless
otherwise provided by law.[64]

At common law, carriers are Afully@ liable
for any loss or injury to property occurring during transport.[65]  Carriers, however, may avoid this liability
by affirmatively showing that the loss or injury at issue was caused solely by
the fault of the shipper.[66]  This exception to carrier liability, however,
only applies when the shipper assumes the carrier=s  responsibility for loading and securing the
cargo.[67]








2.     J&S
and Jackson Did Not Assume the Duty to Safely Load and Secure the Rig

 

The evidence in this case shows
that Texas Specialty and Kellerman retained full control and responsibility for
loading and securing the rig.  Williams
conceded during his deposition testimony that Texas Specialty retained
responsibility to load and secure the rig, despite J&S=s
assistance:

Q:     Well,
now, Texas Specialty Trailer has the responsibility to load and secure its load
that it=s going to haul?

 

A:     We
have the responsibility to secure whatever we haul, yes, sir.

 

Q:     And
what I=m trying to get down is a
breakdown as to what [J&S] was going to do and what Texas Specialty was
going to do before the tractor trailer pulled out of the yard . . . .

 

A:     What
I want to __ We was [sic] told
that there would be __ [J&S=s] crew would be there to
assist us is [sic] in any way we needed to help get the rig up there.

 

Q:     To do whatever you needed them to do?

 

A:     Right.

 

Q:     Whatever you directed them to do?

 

A:     Whatever we asked to do, yes.

 

Q:     Okay.  But as far as securing the load, as between
Jackson & Simmen and Texas Specialty, that was Texas Specialty=s responsibility?

 

A:     That was Texas Specialty=s.

Similarly, Kellerman testified
that he was responsible for loading the rig:








Q:     Who=s in charge of loading
that rig?

 

A:     Me.

 

.
. . .

 

Q:     So
let=s say Mr.__Mr. Williams come [sic]
in and says, I want to do this differently; and you feel like this is unsafe,
you=re not driving the rig?

 

A:     I=m responsible.

 

Q:     Okay.  And so the day that this rig was loaded, it
was under your direction and control?

 

A:     Yes,
sir.

 

Q:     All
right.  And as you __as you sit here this
morning, you=re __ you=re taking full
responsibility for the loading of that rig?

 

A:     Yes, sir.

Based on the evidence, we
conclude that J&S and Jackson had no duty as a matter of law with regard to
the loading of the rig, and, thus, the trial court did not err or abuse its
discretion in failing to treat them as responsible parties or in refusing to
submit to the jury issues regarding their proportionate responsibility.  The fact that J&S and Jackson assisted in
loading the rig, without more, does not impose on them a duty to insure the
safe and secure loading of the rig.[68]  Accordingly, we overrule appellants= third,
fourth, and fifth issues.








                                  VII.    Prejudgment Interest

In their
eighth issue on appeal, appellants contend that the trial court erred in
awarding J&S prejudgment interest on its claims for the cost to repair or
replace the rig and for its lost profits.

A.     Standard of Review

We
review a trial court=s award of prejudgment interest
under the abuse of discretion standard.[69]  Under this standard, we will not disturb a
trial court=s findings on factual issues
unless the court reasonably could have reached only one decision and it failed
to do so.[70]  However, a Atrial
court has no >discretion= in
determining what the law is or applying the law to the facts.@[71]  The abuse of discretion standard applies to
the trial court=s factual findings as they
relate to prejudgment interest, but the de novo standard applies to the trial
court=s
application of the law to the facts.[72]








B.     Damages
to Repair or Replace the Rig

Appellants complain that the
damages of $750,000 to repair or replace the rig constitutes Afuture
damages@ because
the rig had not been repaired as of the date judgment was entered, and, thus,
the award of prejudgment interest on these damages is improper.

Prejudgment interest is not
recoverable for future losses.[73]  Instead, it is intended to compensate Afor lost
use of the money due as damages during the lapse of time between the accrual of
the claim and the date of judgment.@[74]

It is undisputed in this case
that J&S=s claim accrued when the rig
sustained damage at the time of the accident. 
J&S=s right to money damages for
repair or replacement of the rig accrued at this time, not when the rig was or
will be actually repaired or replaced. 
Therefore, we hold these are not future damages and that the trial court
did not abuse its discretion in awarding prejudgment interest on J&S=s claim
for damages to repair or replace the rig.








C.     Lost
Profit Damages

Appellants also contend that the
trial court improperly awarded prejudgment interest on J&S=s lost
profits damages because past and future lost profits were not segregated.  J&S concedes that the trial court erred
in awarding prejudgment interest as to the future lost profits, but asks that
we modify the judgment by reducing it by an amount it claims is attributable to
prejudgment interest on future lost profits only.

To recover prejudgment interest
on an award of past damages, the party seeking to obtain prejudgment interest
must segregate past damages from future damages.[75]  Prejudgment interest is not recoverable on
the elements of damages at issue when this burden is not met.[76]  Accordingly, we reverse and vacate the award
of prejudgment interest on J&S=s lost
profits.[77]  Appellants= eighth
issue challenging the award of prejudgment interest on J&S=s lost
profits is sustained.  Otherwise, the
eighth issue is overruled.








                                        VIII.    Conclusion

We
reverse the judgment in part as to Williams=
individual liability and the award of prejudgment interest on J&S=s lost
profits.  Accordingly, we render judgment
that J&S take nothing from Williams individually on J&S=s
negligence claim, we vacate the award of prejudgment interest on J&S=s lost
profits, and we remand the case to the trial court to recalculate prejudgment
interest on J&S=s remaining damages that are
subject to prejudgment interest, excluding 

the amounts improperly awarded as future lost
profits.  In all other respects, we
affirm the judgment of the trial court.

 

JOHN CAYCE

CHIEF JUSTICE

 

 

PANEL: 
CAYCE, C.J.; WALKER, J.; and HOLMAN, J. (Retired)

 

HOLMAN, J. (Retired), not participating.  See Tex. R. App. P. 41.1(b)

 

DELIVERED:  August 13, 2009











[1]See Tex. R. App. P. 47.4.





[2]Tex. Bus. & Com. Code
Ann. '' 17.41B.63 (Vernon 2002 &
Supp. 2008).





[3]See Bradleys= Elec., Inc. v. Cigna
Lloyds Ins. Co., 995 S.W.2d 675, 677 (Tex. 1999) (holding that courts of appeals must
consider issues that may result in rendition before considering issues that
could result only in remand).





[4]Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040
(1999).





[5]Cent. Ready Mix Concrete
Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d
802, 807, 827 (Tex. 2005).





[6]Cont=l Coffee Prods. Co. v.
Cazarez,
937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935 S.W.2d 114, 118
(Tex. 1996).





[7]Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983).





[8]Rocor Int=l, Inc. v. Nat=l Union Fire Ins. Co., 77 S.W.3d 253, 262
(Tex. 2002).





[9]Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986) (op. on reh=g); Garza v. Alviar,
395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150 Tex. 662, 244
S.W.2d 660, 661 (1951).





[10]Doe v. Boys Clubs of
Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995).





[11]IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 799 (Tex. 2004).





[12]Excel Corp. v. Apodaca, 81 S.W.3d 817, 820
(Tex. 2002).





[13]See 49 C.F.R. _ 393.102(a) (2008).  0.8g signifies the force exerted by eighty
percent of the weight of the load.





[14]Appellants challenge
Kerezman=s qualifications, as well
as the reliability of her testimony, contending that it is Abare opinion without any
foundation or expertise.@  None of these objections, however, were
raised at trial.  They are, therefore,
waived. See Tex. R. App. P. 33.1; see also City of San Antonio v.
Pollock, 284 S.W.3d 809, 816_17 (Tex. 2009).





[15]The court submitted three
separate DTPA violations to the jury: A[r]epresenting that services had or would have
characteristics that they did not have@; A[r]epresenting that services are or will be of a
particular quality if they were of another@; and A[r]epresenting that an agreement confers or
involves rights that it did not have or involve.@  See Tex. Bus. & Com. Code Ann. ' 17.46(b)(5), (7),
(12).  The jury found that Texas
Specialty and Williams committed all three violations.





[16]Crawford v. Ace Sign,
Inc.,
917 S.W.2d 12, 13B15 (Tex. 1996); Head
v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 742B43 (Tex. App.CFort Worth 2005, no
pet.).





[17]See Cont=l Dredging, Inc. v.
De-Kaizered, Inc., 120 S.W.3d 380, 389B90 (Tex. App.CTexarkana 2003, pet. denied).





[18]See Bekins Moving &
Storage Co. v. Williams, 947 S.W.2d 568, 577 (Tex. App.CTexarkana 1997, no writ).





[19]Head, 159 S.W.3d at 743.





[20]At the time Williams made
the representation that Texas Specialty Acould move@ the rig, the record shows Texas Specialty=s primary business was
not hauling large equipment or drilling rigs but buying and selling
trailers.  Instead of apprising J&S
of this fact, Texas Specialty examined the rig, measured it, and represented
that it had the equipment and expertise to move the rig.  The record, however, demonstrates that Texas
Specialty did not accurately measure the rig, did not have adequate equipment,
and could not load and move the rig because it lacked the required experience
and equipment to do so safely.





[21]See, e.g., Best v. Ryan Auto
Group, Inc., 786 S.W.2d 670, 671B72 (Tex. 1990) (holding that misrepresentation
that the purchaser of a motorcycle dealership would Abe able to buy parts and
vehicles as [the former owner] had been buying@ was actionable under
DTPA section 17.46(b)(12) when the Adealership@ conveyance did not in fact include the ability
to purchase more vehicles from the motorcycle manufacturer).





[22]Because the Acould move@ statement alone will
support the DTPA verdict, we need not reach the parties= arguments concerning
whether Williams=s statement that the rig Awould ride@ would support those
findings.  See Tex. R. App. P.
47.1.





[23]Tri v. J.T.T., 162 S.W.3d 552, 563
(Tex. 2005).





[24]Leitch, 935 S.W.2d at 117
(emphasis added).





[25]See id.





[26]Appellees point out that
in response to special question number two, the jury found Williams personally
liable under the DTPA.  See Miller v.
Keyser, 90 S.W.3d 712, 717 (Tex. 2002). 
This finding is not challenged by appellants, except as to a sufficiency
challenge which we have overruled. 
Consequently, although we sustain appellants= sixth issue, it results
in no change in the judgment because Williams is individually liable for the
judgment, as a result of the jury=s DTPA findings.





[27]Wilson v. Tex. Parks
& Wildlife Dep't, 886 S.W.2d 259, 261 (Tex. 1994).





[28]Id. at 262.





[29]In re Mo. Pac. R.R. Co., 998 S.W.2d 212, 216
(Tex. 1999).





[30]Tex. R. Civ. P. 87(2)(a),
(3)(a); In re Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999).





[31]Wilson v. Tex. Parks
& Wildlife Dep't, 886 S.W.2d at 261.





[32]Tex. Civ. Prac. &
Rem. Code Ann. ' 15.064(b) (Vernon 2002);
Ruiz v. Conoco, Inc., 868 S.W.2d 752, 758 (Tex. 1993).





[33]Ruiz, 868 S.W.2d at 758.





[34]Id.





[35]Bonham State Bank v.
Beadle,
907 S.W.2d 465, 471 (Tex. 1995); Wilson v. Tex. Parks & Wildlife
Dep't, 886 S.W.2d at 262.





[36]Ruiz, 868 S.W.2d at 757; Rosales
v. H.E. Butt Grocery Co., 905 S.W.2d 745, 750 (Tex. App.CSan Antonio 1995, writ
denied).





[37]Ruiz, 868 S.W.2d at 757.





[38]Tex. Civ. Prac. &
Rem. Code Ann. ' 15.064(b).





[39]Gilcrease v. Garlock,
Inc.,
211 S.W.3d 448, 459 (Tex. App.CEl Paso 2006, no pet.) (citing Wilson v. Tex.
Parks & Wildlife Dep't, 886 S.W.2d at 262).





[40]Tex. Civ. Prac. &
Rem. Code Ann. ' 15.002(a)(1).





[41]Tex. Bus. & Com. Code
Ann. ' 17.56(2).





[42]See Chiriboga v. State
Farm Mut. Auto. Ins. Co., 96 S.W.3d 673, 680B82 (Tex. App.CAustin 2003, no pet.) (examining the essential
elements of the claim when determining where a substantial part of events or
omissions occurred giving rise to plaintiff=s declaratory-judgment action regarding insurer=s duty to defend); see
also KW Constr. v. Stephens & Sons Concrete Contractors, Inc., 165
S.W.3d 874, 882B83 (Tex. App.CTexarkana 2005, pet.
denied) (determining Asubstantial part@ venue in a breach of
contract action in county where events or omissions occurred relating to two of
the claim=s four essential
elements).





[43]Tex. Bus. & Com. Code
Ann. '' 17.46, 17.50(a); see
also Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 (Tex. 2002); Gill
v. Boyd Distribution Ctr., 64 S.W.3d 601, 604 (Tex. App.CTexarkana 2001, pet.
denied).  The parties do not dispute that
J&S is a consumer under the DTPA.





[44]The jury found Texas
Specialty and Williams violated DTPA section 17.46(b)(5), (7), and (12).





[45]See Chiriboga, 96 S.W.3d at 681.





[46]Id.





[47]See Massey v. Columbus
State Bank, 35 S.W.3d 697, 700 (Tex. App.CHouston [1st Dist.] 2000,
pet. denied) (noting venue would be proper based on threatening and harassing
telephone calls and letters sent to defendant in the county of venue); see
also Moveforfree.com Inc. v. David Hetrick, Inc., No. 14‑07‑00044‑CV,
2009 WL 1416069, at *3 (Tex. App.CHouston [14th Dist.] May 21, 2009, no pet.)
(finding venue under section 15.002(a)(1) in the county in which  misrepresentations were received and partial
performance of the contract was required); Siemens Corp. v. Bartek, No.
03-04-00613-CV, 2006 WL 1126219, at *6_7 (Tex. App.CAustin Apr. 28, 2006, no
pet.) (mem. op.) (same).





[48]Because we hold that the
evidence supports venue in Jack County under section 15.002(a)=s Asubstantial part@ provision based on the
actionable misrepresentation that Texas Specialty Acould move@ the rig, we do not reach
application of the DTPA=s section 17.56(2) venue
provision.  See Tex. R. App. P.
47.1.





[49]Appellants complain that
the trial court erred (1) in granting J&S=s traditional and
no-evidence partial summary judgment motion on Texas Specialty=s proportionate
responsibility defense, (2) in granting Jackson=s traditional and
no-evidence partial summary judgment and motion to strike the designation of
Jackson as a responsible third party, and (3) in failing to submit the issue of
J&S=s and Jackson=s proportionate
responsibility to the jury.





[50]GuideOne Lloyds Ins. Co.
v. First Baptist Church of Bedford, 268 S.W.3d 822, 837 (Tex. App.CFort Worth 2008, no pet.)
(citing In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000)).





[51]Triplex Commc=ns, Inc. v. Riley, 900 S.W.2d 716, 718
(Tex. 1995); see also Tex. R. Civ. P. 278; Elbaor v. Smith, 845
S.W.2d 240, 243 (Tex.1992) (AA trial court may refuse to submit an issue only
if no evidence exists to warrant its submission.@).





[52]Tex. Civ. Prac. &
Rem. Code Ann. ' 33.002(a)(1), (2)
(Vernon 2008).





[53]Tex. Civ. Prac. &
Rem. Code Ann. ' 33.003(b).





[54]Kroger Co. v. Keng, 23 S.W.3d 347, 351
(Tex. 2000); see Moore v. Kitsmiller, 201 S.W.3d 147, 151 (Tex. App.CTyler 2006, pet. denied).





[55]Parker v. Highland Park,
Inc.,
565 S.W.2d 512, 520 (Tex. 1978).





[56]Keng, 23 S.W.3d at 351;
Brown v. Edwards Transfer Co., 764 S.W.2d 220, 223 (Tex. 1988). 





[57]Moore, 201 S.W.3d at 151.





[58]Nabors Drilling, U.S.A.,
Inc. v. Escoto, 52 Tex. Sup. Ct. J. 885, 886, 2009 WL 1712797, at *2 (Tex. June 19,
2009); D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002).





[59]Tri, 162 S.W.3d at 563; see
also Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 395 (Tex.
1991) (reviewing judgment notwithstanding the verdict and recognizing that A[t]he existence of a
legal duty is a question of law for the court although in some instances it may
require the resolution of disputed facts or inferences which are inappropriate
for legal resolution@).





[60]Kroger Co. v. Elwood, 197 S.W.3d 793, 794
(Tex. 2006).





[61]Prudential Ins. Co. of
Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000) (AA court may instruct a
verdict if no evidence of probative force raises a fact issue on the material
questions in the suit.@).





[62]See 49 C.F.R. ' 392.9 (2007); 37
Tex. Admin. Code ' 4.11 (last amended
2008) (Tex. Dep=t of Pub. Safety).





[63]For example, section
392.9 provides:

 

[A] motor carrier may not
require or permit a driver to operate a commercial motor vehicle unless BB 

 

(1) the commercial motor
vehicle=s cargo is properly
distributed and adequately secured as specified in '' 393.100 through 393.136
of this subchapter.

 

49 C.F.R. ' 392.9.





[64]Tex. Transp. Code Ann. ' 5.001(a)(1) (Vernon
1999).





[65]Common Carrier Motor
Freight Ass'n v. NCH Corp., 788 S.W.2d 207, 209 (Tex. App.CAustin 1990, writ denied); see United States
v. Savage Truck Line Inc., 209 F.2d 442, 445B47 (4th Cir. 1953), cert.
denied, 347 U.S. 952 (1954).





[66]Mo. Pac. R.R. Co. v.
Elmore & Stahl, 368 S.W.2d 99, 101 (Tex.1963), aff=d, 377 U.S. 134 (1964); see
also Cent. Freight Lines, Inc. v. Naztec, Inc., 790 S.W.2d 733, 735 (Tex.
App.CEl Paso 1990, no writ); Utils.
Pipeline Co. v. Am. Petrofina Mktg., 760 S.W.2d 719, 723 (Tex. App.CDallas 1988, no writ).





[67]See Savage Truck Line
Inc., 209 F.2d at 445B47.





[68]See, e.g., Elmore & Stahl,
368 S.W.2d at 101.





[69]Toshiba Mach. Co., Am. v.
SPM Flow Control, Inc., 180 S.W.3d 761, 785 (Tex. App.CFort Worth 2005, pet.
granted, judgm't vacated w.r.m.) (citing J.C. Penney Life Ins. Co. v.
Heinrich, 32 S.W.3d 280, 289 (Tex. App.CSan Antonio 2000, pet. denied)).





[70]Id. (citing Walker v.
Packer, 827 S.W.2d 833, 839B40 (Tex.1992)).





[71]Walker, 827 S.W.2d at 840
(citation omitted).





[72]Toshiba Mach. Co., 180 S.W.3d at 785.





[73]See Tex. Bus. & Com. Code
Ann. ' 17.50(f) (Vernon Supp. 2008)
(stating in part that A[a] court may not award
prejudgment interest applicable to . . . damages for future loss under [the
DTPA]@); see also Tex.
Fin. Code Ann. ' 304.101 (Vernon
2006) (AThis subchapter applies
only to a wrongful death, personal injury, or property damage case of a court
of this state.@).  Prejudgment interest may not be assessed or
recovered on an award of future damages governed by chapter 304 subchapter
B.  See Tex. Fin. Code Ann. ' 304.1045 (Vernon
2006).





[74]Brainard v. Trinity
Universal Ins. Co., 216 S.W.3d 809, 812 (Tex. 2006).





[75]Cavnar v. Quality Control
Parking, Inc., 696 S.W.2d 549, 556 (Tex. 1985); Cresthaven Nursing Residence v.
Freeman, 134 S.W.3d 214, 223 (Tex. App._Amarillo 2003, no pet.).





[76]Cavnar, 696 S.W.2d at 556; KMG
Kanal‑Muller‑Gruppe Deutschland GmbH & Co. KG v. Davis, 175
S.W.3d 379, 396B97 (Tex. App.CHouston [1st Dist.] 2005,
no pet.); Cresthaven, 134 S.W.3d at 223.





[77]See, e.g., Cavnar, 696 S.W.2d at 556; KMG
Kanal‑Muller‑Gruppe Deutschland, 175 S.W.3d at 396B97.